**PUBLIC CITIZEN, et al., Plaintiffs,**

v.

**Frank BURKE, Acting Archivist, National Archives and Records Administration, et al., Defendants.**

**C.A. No. 86–1787.**

United States District Court, District of Columbia.

March 6, 1987.

Eric R. Glitzenstein, Alan Morrison and Katherine A. Meyer, Jane E. Kirtley and Elaine English, Reporters Committee for Freedom of the Press, Washington, D.C., for plaintiffs.

Herbert J. Miller, Jr., Martin D. Minsker, R. Stan Mortenson, Miller, Cassidy, Larroca, & Lewin, David J. Anderson, and Jeffrey Paulsen, Dept. of Justice, Washington, D.C., for defendants.

1. 44 U.S.C. Sec. 2111 Pub.L. 93–526, 88 Stat. 1695 (1974).

2. In *Allen v. Carmen*, 578 F.Supp. 951 (D.D..1983), the District Court held the legislative veto provision of the Act unconstitutional consistent with *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764,

MEMORANDUM OPINION

REVERCOMB, District Judge.

This matter is before the Court on the parties' cross motions for summary judgment. Oral argument was held February 2, 1987.

This case concerns the disposition of the presidential papers and recordings of former President Richard Nixon. The judicial history of the disposition of those documents and tapes is germane to the issues presented by these motions.

On December 19, 1974, the Presidential Recordings and Materials Preservation Act became law.[1] The Act directed the General Services Administration to take custody of all tape recordings and other Presidential materials accumulated during the Nixon Presidency and directed the Administrator to promulgate regulations governing public access to the materials. One day after the Act's passage former President Nixon brought suit in the District Court challenging the Act's constitutionality and seeking declaratory and injunctive relief against it. A three-judge District Court ruled that the Act on its face did not violate the Constitution, *Nixon v. Administrator* 408 F.Supp. 321 (D.D.C.1976). The Supreme Court affirmed, *Nixon v. Administrator*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977).

The former president then challenged the constitutionality of two of the regulations promulgated to implement the Act. The constitutionality of those regulations was upheld in *Nixon v. Freeman*, 670 F.2d 346 (D.C.Cir.1982).[2] The opinion in Freeman has a broader significance to the issues presented here.

On February 18, 1986, in reply to a request by the Office of Management and Budget, who has authority to review drafts of proposed and final rules for executive agencies, the Office of Legal Counsel of

77 S.Ct. 317 (1983), but held that provision severable from the remainder of the Act. Although the veto provision was held severable Judge Hogan held the regulations invalid as the veto provision tainted the promulgation of those regulations. New regulations were subsequently promulgated.

the Department of Justice issued a 30 page unpublished memorandum titled Nixon Papers Regulations. The DOJ/OLC memorandum stated that the regulations are valid and adequate "so long as they are interpreted and administered as set forth in this opinion." DOJ/OLC memorandum at p. 1. According to the memorandum the Archivist is required to honor assertions of executive privilege made by former President Nixon even if the incumbent President either "(a) would not have personally invoked the privilege under the circumstances or (b) does not believe that the documents fall within the scope of the privilege." DOJ/OLC memorandum at p. 25. Apparently, it is defendants' position that the presumptive nature of the privilege is inconsistent with the Archivist's administrative authority to determine that no privilege exists.

Plaintiffs, two public interest organizations and a free-lance journalist/author, brought this action seeking to nullify any impact of the DOJ/OLC memorandum on the orderly release of the Nixon papers under the statutory and regulatory scheme. Specifically, plaintiffs contend that the memorandum is contrary to the Act, the decided cases, and is not required by the Constitution.

Prior to oral argument on these motions, all defendants contended that review of the issues before this Court was inappropriate in that plaintiffs lacked requisite standing to bring the action and that the issues were not ripe for review. At oral argument counsel for the federal defendants argued that three ingredients were required: 1) the OLC opinion must be in existence, 2) there must be a claim of executive privilege by former President Nixon, and 3) the Archivist must apply the advice in the OLC opinion and come up with a different result than he would have come up with if the OLC opinion had never been issued. (Transcript at 34). Federal defendants argued that at most, only one of the three ingredients was present—the existence of the OLC opinion. Assertion of executive privilege by defendant Nixon is speculative, the federal defendants contend, as is what action the Archivist would take if executive privilege were asserted.

■ Following the argument presented by government, counsel for defendant Nixon represented to the Court that there, indeed, will be claims of executive privilege asserted in the near future and that "the matter ... is ripe at this particular time." (Transcript at 51). This Court must conclude that executive privilege claims are no longer speculative. When viewing this revelation in connection with testimony of the Archivist before Congress that, in his opinion, the OLC memorandum binds him to honor all claims of executive privilege asserted by former President Nixon, it is believed that the injury required by the justiciability doctrines of standing, *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) and ripeness *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) is present.

In the *Regional Rail Reorganization Act Cases* the Court held that "[w]here the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." 419 U.S. at 143, 95 S.Ct. at 358. Quoting *Pennsylvania v. West Virginia* 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923) the Court added: "one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough." *Id.*

In the instant case, this Court finds it irrelevant that there will be a time delay before the DOJ/OLC memorandum is applied in the processing of assertions of executive privilege claims. The injury to plaintiffs is certainly impending and they need not wait for all three ingredients to be present, before review is appropriate. The statute directs immediate consideration and resolution of any legal or constitutional challenge to the law or any regulation issued pursuant to authority of the Act. 44 U.S.C. Sec. 2111, Subsect. 105(a) (1984).

On the merits, this Court is compelled by the opinion of the D.C. Circuit in a previous case concerning the Nixon presidential papers and the regulatory scheme for their disclosure. In *Nixon v. Freeman, supra,* the former President challenged regulations as deficient in that they placed upon him the burden of coming forward to challenge any disclosure that he thought would violate the Presidential privilege of confidentiality. The appellate court rejected a proposal by Mr. Nixon which he contended would remedy that deficiency and respect what the Supreme Court in *U.S. v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) recognized as the "presumptive" nature of the privilege.[3] Disagreeing that the "presumptive" nature of the privilege required the adoption of any additional feature, the Court cited *Nixon v. Administrator,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) wherein the Supreme Court rejected an argument that archival screening "reversed" the presumptive privilege, noting that the Act required the Administrator to preserve Mr. Nixon's right to assert the privilege and declared the Act's guidelines to be on their face as broad as the privilege itself.

Thus, there is no basis for appellant's claim that the act "reverses" the presumption in favor of confidentiality of Presidential papers recognized in *United States v. Nixon.* Appellant's right to assert the privilege is specifically preserved by the Act. The guideline provisions on their face are as broad as the privilege itself. If the broadly written protections of the Act should nevertheless prove inadequate to safeguard appellant's rights or to prevent usurpation of executive powers, there will be time enough to consider that problem in a specific factual context.

433 U.S. at 455, 97 S.Ct. at 2796.

Likewise, this Court must hold that the presumptive nature of the privilege vitiates any need for the Department of Justice, Office of Legal Counsel memoranda, and any purported mandates to the Archivist, to be found within it. The regulatory scheme as it exists today, in its sixth version, provides all the requisites to preservation of the privilege, thus rendering the DOJ/OLC memorandum superfluous.

This Court follows the *Nixon v. Freeman* decision, particularly where it said:

[W]e think that those who see in disclosure a threat to the privilege must be given a meaningful opportunity to contest disclosure on that basis. The regulations give Mr. Nixon such an opportunity. He can raise a challenge by sending a letter to the Administrator [*archivist*] explaining his position; only if his claim is rejected administratively need he present his claim in court.

670 F.2d at 359. The presumptive nature of the privilege does not require the regulatory scheme of the statute, previously approved by the courts, to be discarded. The presumptive privilege is preserved for the former President to assert in Court.

 There is no question that the Attorney General of the United States is authorized to issue his opinion, when requested to do so by the head of an executive department, on questions of law arising in the administration of his department.[4] As interpreted by the courts, an Attorney General's opinion is binding as a matter of law on those who request it until withdrawn by the Attorney General or overruled by the

---

3. In *U.S. v. Nixon* the Supreme Court stated: "the expectation of a President to the confidentiality of his conversations and correspondence ... has all the values to which we accord deference for the privacy of all citizens and, added to those values, is the necessity for protection of the public interest in candid, objective, and even blunt or harsh opinions in Presidential decisionmaking. A President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions to do so in a way many would be unwilling to express except privately. These are the considerations justifying a presumptive privilege for Presidential communications. The privilege is fundamental to the operation of government and inextricably rooted in the separation of powers under the Constitution." 418 U.S. at 708, 94 S.Ct. at 3107.

4. 28 U.S.C. Sec. 512 (1982 8 Supp. III 1985).

courts.[5] However, this general rule has been held not to apply "When the matter is within the proper discretion of a department official.... In those circumstances an opinion is not controlling in a proper area of discretion."[6] Under such circumstances an opinion would be merely advisory. In *Nixon v. Freeman* the Court recognized that the Archivist, under the regulatory scheme, has the discretion to consider and either accept or reject President Nixon's claims of executive privilege. As these acts of the Archivist have been held to be properly within his discretion, the DOJ/OLC opinion cannot be controlling. Stated differently, the DOJ/OLC opinion cannot be reconciled with this Circuit's opinion in *Nixon v. Freeman*.

■ This Court concludes that as the Act, in *Nixon v. Administrator supra* and the regulatory scheme in *Nixon v. Freeman supra* have withstood scrutiny as to their constitutionality and survived, the DOJ/OLC memorandum is not compelled by the Constitution. Furthermore, the court concludes that the memorandum thwarted the legislative intent of the Act and the regulations promulgated pursuant to the Act.

Accordingly, it is DECLARED that the February 18, 1986 memorandum from the Department of Justice to the Office of Management and Budget that the National Archives and Records Administration must honor all claims of executive privilege asserted by former presidents is contrary to law and cannot be relied on by the National Archives in implementing the Presidential Recordings and Materials Preservation Act, 44 U.S.C. Sec. 2111, and, it is further

ORDERED that the National Archives and Records Administration shall not comply with the DOJ/OLC's February 18, 1986 memorandum in implementing the Presidential Recordings and Materials Preserva-

tion Act and shall instead assess the validity of any claims of executive privilege asserted by former presidents in accordance with its own regulations, 50 Fed.Reg. 7228 (February 28, 1986).

### JUDGMENT ORDER

In accordance with the Court's Memorandum Opinion granting plaintiffs' motion for summary judgment, the defendants' cross-motion is DENIED, and judgment is entered for the plaintiffs.

---

**5.** *Smith v. Jackson* 246 U.S. 388, 38 S.Ct. 353, 62 L.Ed. 788 (1918). In *Smith* the Supreme Court said: "[W]e are of the opinion that is obvious on the face of the statement of the case that the auditor had no power to refuse to carry out the law, and that any doubt which he might have had should have been subordinated first, to the ruling of the Attorney General and second be-

yond all possible question, to the judgments of the court below." 246 U.S. at 390–91, 38 S.Ct. at 353–54. See also, *United States Bedding Co. v. United States*, 55 Ct.Cl. 459, 460–61 (1920).

**6.** *Edwards v. Carter* 580 F.2d 1055, 1103 n. 42 (D.C.Cir.1978).