MICHIGAN BEER & WINE WHOLESALERS ASSOCIATION v
ATTORNEY GENERAL

Docket No. 72460. Submitted April 11, 1984, at Lansing.—Decided
April 22, 1985. Leave to appeal applied for.

In 1975 the Michigan Liquor Control Commission promulagated
certain rules which either prohibited or restricted price and
brand advertising of alcoholic liquor by manufacturers, whole-
salers, retailers, and outstate sellers. In response to requests for
opinions on the constitutionality of the rules, the Attorney
General issued opinions finding that certain rules banning
brand and price advertising were invalid both as improper
exercises of the state's police power and as unconstitutional
restraints on the freedom of commercial speech guaranteed by
the First and Fourteenth Amendments to the United States
Constitution and article 1, § 5 of the Michigan Constitution of
1963. The Michigan Beer & Wine Wholesalers Association and
others filed suit against the Attorney General in Ingham Cir-
cuit Court alleging that the Attorney General improperly acted
outside the scope of his authority in issuing the opinions and
that the administrative rules addressed in those opinions were
valid and enforceable. The court, James T. Kallman, J., granted
summary judgment in favor of the plaintiffs. The Attorney
General appealed. The Court of Appeals on its own motion
added the Michigan Liquor Control Commission as a party
defendant. *Held:*

1. The Attorney General neither impermissibly ventured into
the legislative arena by making an assumption that, by enact-
ing the regulations in question, the Liquor Control Commission
intended to discourage the artificial stimulation of liquor con-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Attorney General § 11.

[3-5] 16A Am Jur 2d, Constitutional Law § 505.

[6] 20 Am Jur 2d, Courts § 2260.

[7] 45 Am Jur 2d, Intoxicating Liquors §§ 23, 42.

Comment note.—Extent of state regulatory power under Twenty-
first Amendment. 34 L Ed 2d 805.

[8] 16 Am Jur 2d, Constitutional Law § 424 *et seq.*

58 Am Jur 2d, Occupations, Trades, and Professions § 1.

[9] 16A Am Jur 2d, Constitutional Law §§ 391-411.

sumption nor invaded the province of the courts by issuing the opinions. The Attorney General did not exceed the scope of his authority in issuing those opinions.

2. The regulations at issue are impermissible restraints on the freedom of commercial speech in violation of the First and Fourteenth Amendments of the United States Constitution and article 1, § 5 of the Michigan Constitution of 1963.

3. No real and substantial relationship exists between the regulations in question and the promotion of temperance. Furthermore, a state's police power does not permit the state to enact measures for the welfare of its citizens which violate personal freedoms protected by both the state and federal constitutions.

Reversed.

1. ATTORNEY GENERAL — OPINIONS.

The Attorney General has the statutory duty to give his opinion upon all questions of law submitted to him by the Legislature, by either branch of the Legislature, by the governor, or by any other state officer; while such opinions do not have the force of law, and are therefore not binding on courts, they have been held to be binding on state agencies and officers (MCL 14.32; MSA 3.185).

2. ATTORNEY GENERAL — OPINIONS.

The Attorney General's statutory duty to give opinions on questions of law requires him to advise members of the Legislature as to the constitutionality of state statutes and administrative rules when so requested.

3. CONSTITUTIONAL LAW — COMMERCIAL SPEECH — FIRST AMENDMENT.

Commercial speech can be restricted or prohibited under the First Amendment only where the governmental interest that is thereby advanced outweighs the rights of the parties involved (US Const, Am I).

4. CONSTITUTIONAL LAW — COMMERCIAL SPEECH — FIRST AMENDMENT.

Commercial speech, which is expression related solely to the economic interests of the speaker and his audience, is within the ambit of speech protected by the First Amendment but, due to the common sense differences between it and other varieties of speech, is entitled to somewhat lesser protection; the level of protection available depends upon the nature of the commercial expression itself and the nature of the governmental interest served by its regulation (US Const, Am I).

5. Constitutional Law — Commercial Speech — Restraints on
   Commercial Speech.

There is a four-part analysis for determining the validity of
restraints on commercial speech: (1) Is the commercial speech
protected by the First Amendment, *i.e.,* does it concern lawful
activity and not mislead; (2) Is the asserted governmental
interest substantial; (3) Does the regulation directly advance
the governmental interest asserted; and (4) Is the regulation
more extensive than is necessary to serve the governmental
interest.

6. Courts — United States Supreme Court — Summary Disposi-
   tions.

Summary dispositions by the United States Supreme Court are
decisions on the merits and are binding on lower courts, how-
ever, those decisions extend only to the precise issues presented
and necessarily decided by those actions and should not be
understood as breaking new ground but as applying principles
established by prior decisions to the particular facts involved.

7. Constitutional Law — Intoxicating Liquors — Sale of Liquor
   — State Regulation.

A state may regulate, pursuant to the Twenty-first Amendment,
the times, places, and circumstances under which liquor may
be sold, even to the point of prohibiting its sale entirely;
however, if an individual has important interests which other-
wise would be entitled to the protection of procedural due
process, he cannot be denied that constitutional safeguard
because the business in which he is engaged happens to involve
alcoholic beverages (US Const, Am XXI).

8. Constitutional Law — Police Power — Right to Engage in
   Business.

The constitutional right to engage in business is subject to the
police power of the state to preserve the public health, safety,
morals, and general welfare; if a real and substantial relation-
ship exists between regulations enacted pursuant to a state's
police power and the health, safety, morals, or general welfare
of the public, the regulations will be upheld unless they need-
lessly invade property or personal rights as protected by the
constitution.

9. Constitutional Law — Police Power.

A state's police power, no matter how strong, does not permit the
state to enact measures for the welfare of its citizens which
violate personal freedoms protected by both the state and
federal constitutions.

*Hiller, Larky & Hoekenga (Daniel J. Hoekenga),* and *Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.* (by *Donald L. Reisig),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *John Wernet,* Assistant Attorney General, for Attorney General.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Frank J. Pipp* and *Larry F. Brya,* Assistants Attorney General, for Michigan Liquor Control Commission.

Before: BRONSON, P.J., and MacKENZIE and J. L. BANKS,* JJ.

MacKENZIE, J. This case involves the constitutionality of certain Liquor Control Commission regulations restricting advertising of prices or brands of liquor, wine, and beer. The Attorney General appeals from a grant of summary judgment sustaining the regulations. We reverse.

The Liquor Control Commission, established in 1933 under the Michigan Liquor Control Act, is charged with the duty of controlling the manufacture, possession, transportation, and sale of alcoholic beverages within the State of Michigan. MCL 436.1; MSA 18.971. The commission is further directed to adopt rules and regulations to carry out the policies of the act. MCL 436.7; MSA 18.977. In 1975 the commission promulgated certain rules which either prohibited or restricted price and brand advertising of alcoholic liquor by manufacturers, wholesalers, retailers, and outstate sellers. Similar restrictions had been embodied in the commission's rules since 1935.

In a memorandum dated September 5, 1979,

---

* Circuit judge, sitting on the Corut of Appeals by assignment.

State Representative Richard Fitzpatrick requested the Attorney General's opinion on the constitutionality of Liquor Control Commission rule 33, 1979 AC, R 436.1333, which provides as follows:

"Prices and brands.

"Rule 33. (1) A retail licensee may advertise that he sells alcoholic liquor.

"(2) A retail licensee shall not advertise the brands or the prices of alcoholic liquor off the licensed premises.

"(3) A manufacturer, an outstate seller of beer, an outstate seller of wine, or a wholesaler may advertise the brands of alcoholic liquor he is licensed to sell.

"(4) A manufacturer of beer or wine, an outstate seller of beer, an outstate seller of wine, or a wholesaler shall not advertise the price of beer or wine.

"(5) A wholesaler may give a price list to the retail licensee which states the brands and prices of the beer and wine that he is licensed to sell."

The Attorney General found that subsections (2) and (4) were invalid both as an improper exercise of the state's police power and as an unconstitutional restraint on the freedom of commercial speech guaranteed by the First and Fourteenth Amendments to the United States Constitution and article 1, § 5 of the Michigan Constitution of 1963. OAG, 1981-1982, No 6033, p 561 (February 4, 1982).

Following that opinion, the then chairman of the Liquor Control Commission, Thomas F. Schweigert, requested the Attorney General's opinion as to the validity of several other commission regulations, all of which served to implement the general ban on off-premise price advertising. Consistent with his previous opinion, the Attorney General issued OAG, 1981-1982, No 6051, p 607 (April 6, 1982), in which he found that the follow-

ing sections of the commission's regulations were also invalid:

"R 436.1309 Advertising approval.

* * *

"(2) Advertising in newspapers and periodicals, by all licensees except retail licensees, shall be limited to those published not less than quarterly and having a second class mailing permit, except upon written order of the commission.

"(3) Alcoholic liquor shall not be advertised in a publication or program for a special occasion, except upon written order of the commission 30 days in advance of the event."

"R 436.1315 Retail advertising space.

* * *

"(2) Alcoholic liquor shall not be advertised on the licensed premises by placing the alcoholic liquor or an advertisement of alcoholic liquor in a window facing outside the licensed premises."

"R 436.1327 Outside signs.

"Rule 27. (1) Advertising of a brand of alcoholic liquor shall not be placed or erected on the outside of the licensed premises of a retail licensee."

On June 25, 1982, plaintiffs[1] commenced the present action in Ingham Circuit Court. Plaintiffs alleged that the Attorney General improperly acted outside the scope of his authority in issuing opinions No. 6033 and 6051, and, further, that the administrative rules addressed in those opinions were valid and enforceable. Plaintiffs' subsequent motion for summary judgment pursuant to GCR 1963, 117.2(2) and (3) was granted following a full

---

[1] Plaintiff Michigan Beer & Wine Wholesalers Association is a non-profit corporation. Plaintiff Torkal Corporation, doing business as Wine Basket No. II, is a specially designated merchant under MCL 436.2(q); MSA 18.972(17)—a retail licensee. Plantiffs Linda Bandy and Charles Mitchener are Michigan residents who allege that they are adversely affected by nonenforecement of Liquor Control Commission regulations.

hearing. On July 13, 1983, defendant filed a claim of appeal and a request for stay of the circuit court order along with the request for immediate consideration of the request for a stay. This Court granted defendant's request for immediate consideration but denied his request for stay of the circuit court order. On its own motion, this Court added the Michigan Liquor Control Commission as a party defendant. Accordingly, defendant Liquor Control Commission has been enforcing the rules at issue in the instant case.

Defendant-appellant Attorney General appeals as of right.

I

Plaintiffs first contend, and the circuit court agreed, that the Attorney General improperly exercised powers belonging to the legislative and judicial branches of the government by ruling in opinions No. 6033 and 6051 that the above regulations did not directly advance the presumed purpose behind their promulgation.

The office of the attorney general enjoys a wide range of powers, derived from both the common law and, later, statutory enactments. *Mundy v McDonald,* 216 Mich 444, 450-451; 185 NW 877 (1921). The Attorney General has the duty under MCL 14.32; MSA 3.185, "to give his opinion upon all questions of law submitted to him by the legislature, or by either branch thereof, or by the governor, * * * or any other state officer * * *". While such opinions do not have the force of law, and are therefore not binding on courts, they have been held to be binding on state agencies and officers. *Traverse City School Dist v Attorney General,* 384 Mich 390, 410, fn 2; 185 NW2d 9 (1971); *Queen Airmotive, Inc v Dep't of Treasury,* 105

Mich App 231, 236; 306 NW2d 461 (1981). *Cf. East Grand Rapids School Dist v Kent County Tax Allocation Bd,* 415 Mich 381, 394; 330 NW2d 7 (1982).

The Attorney General's statutory duty to give opinions on questions of law requires him to advise members of the Legislature as to the constitutionality of state statutes and administrative rules when so requested. *East Grand Rapids School Dist, supra,* p 394. Such determinations can be made only after the statute or rule in question has been examined under appropriate constitutional standards. Under the First Amendment, commercial speech can be restricted or prohibited only where the governmental interest that is thereby advanced outweighs the rights of the parties involved. See Section II-A below.

In the case at bar the Attorney General found that by enacting these regulations, the commission intended to discourage the artificial stimulation of liquor consumption. Contrary to plaintiffs' assertion, however, such findings are not an improper determination of fact but a reasonable assumption regarding the public policy concerns underlying the commission's regulations. In order properly and completely to address the question of whether the advertising rules were constitutionally valid, such an assumption on the part of the Attorney General was necessary. Plaintiffs do not contend that this assumption was wrong. Indeed, plaintiffs themselves state that the rules were aimed at discouraging the artificial stimulation of alcohol consumption. We conclude that the Attorney General did not impermissibly venture into the legislative arena by making such an assumption.

Nor do we find that the Attorney General invaded the province of the courts. The very pendency of the instant litigation demonstrates that

opinions of the Attorney General are not final and binding, but are instead subject to review in the courts of this state. We find that the Attorney General did not exceed the scope of his authority in issuing OAG Nos. 6033 and 6051.

## II

Plaintiffs next argue that the rules in question do not constitute impermissible restraints on the freedom of commercial speech guaranteed by the First and Fourteenth Amendments to the U. S. Constitution and by art 1, § 5 of the Michigan Constitution of 1963. The issue thus framed is whether the State of Michigan can constitutionally prohibit the dissemination of truthful information concerning the price at which alcoholic beverages may be sold.

## A

The First Amendment to the Constitution of the United States provides in pertinent part that: "Congress shall make no law * * * abridging the freedom of speech * * *." US Const, Am I. By virtue of the Fourteenth Amendment, this freedom is also guaranteed against action by the states. See *Virginia State Bd of Pharmacy v Virginia Citizens Consumer Council, Inc,* 425 US 748, 749; 96 S Ct 1817; 48 L Ed 2d 346 (1976).

It has been established that commercial speech, which is "expression related solely to the economic interests of the speaker and its audience", is within the ambit of speech protected by the First Amendment. *Central Hudson Gas & Electric Corp v Public Service Comm of New York,* 447 US 557, 561; 100 S Ct 2343; 65 L Ed 2d 341 (1980); *Virginia State Bd of Pharmacy, supra,* p 762. Commercial speech, however, due to the "common-sense" differences between it and other varieties of speech, is

entitled to somewhat lesser protection. *Central Hudson Gas, supra,* p 562. The level of protection available depends upon the nature of the commercial expression itself and the nature of the governmental interest served by its regulation. *Central Hudson Gas, supra,* pp 562-563; *Metromedia, Inc v City of San Diego,* 453 US 490, 507; 101 S Ct 2882; 69 L Ed 2d 800 (1981) (opinion of White, J.).

The nature of the expression before us is purely commercial: "I will sell you the X [alcoholic beverage] at the Y Price". *Virginia State Bd of Pharmacy, supra,* p 761. This proposition serves several important concerns. First, it advances the economic interests of the speaker. Second, it fosters and encourages the express state public policy of competition in the market place. See, *e.g.,* MCL 445.701 *et seq.;* MSA 28.31 *et seq.,* MCL 445.731 *et seq.;* MSA 28.51 *et seq.,* and MCL 445.761 *et seq.;* MSA 28.61 *et seq.* The free flow of commercial information is "indispensable" to a free enterprise economy such as ours which has at its heart strong and robust competition. *Virginia State Bd of Pharmacy, supra,* p 765; *Bates v State Bar of Arizona,* 433 US 350, 364; 97 S Ct 2691; 53 L Ed 2d 810 (1977). Third, such advertising provides the consumer with information necessary to make cost-effective and well-informed purchases. In this regard we note that the right to free speech encompasses not only the right to advertise, but also the reciprocal right of consumers to receive such advertising. *Virginia State Bd of Pharmacy, supra,* p 757. Weighing against these concerns is the interest of the state in discouraging artificial stimulation of alcohol consumption.

In order to balance these competing interests under the First Amendment, the United States Supreme Court has developed a four-part analysis for determining the validity of restraints on com-

mercial speech. (1) Is the commercial speech protected by the First Amendment; that is, does it concern lawful activity and not mislead? (2) Is the asserted governmental interest substantial? (3) Does the regulation directly advance the governmental interest asserted? (4) Is the regulation more extensive than is necessary to serve the governmental interest? *Central Hudson Gas, supra,* p 566; *Metromedia, Inc, supra,* p 507; *Bolger v Youngs Drug Products Corp,* 463 US 60; 103 S Ct 2875; 77 L Ed 2d 469 (1983). Both parties here agree that the first two steps of the above test are met. Substantial disagreement exists, however, as to whether these regulations "directly advance" the state's interest in promoting temperance. Before resolving this issue, though, we must first address several related topics.

## B

Plaintiffs argue extensively in their brief that the case of *Queensgate Investment Co v Liquor Control Comm,* 69 Ohio St 2d 361; 433 NE2d 138 (1982), *app dis* 459 US 807; 103 S Ct 31; 74 L Ed 2d 45 (1982), controls the instant case. The plaintiff in *Queensgate* challenged on First Amendment grounds a state regulation which prohibited holders of certain liquor permits from advertising the price per bottle or drink of any alcoholic beverage. Invoking the four-part *Central Hudson Gas* test, the Ohio Supreme Court found the regulation to be constitutionally permissible. The plaintiff thereafter filed a timely appeal with the United States Supreme Court on the issue of whether the regulation violated the First and Fourteenth Amendments by suppressing the public dissemination of truthful information concerning a lawful activity. On October 4, 1982, the Supreme Court dismissed the appeal for want of a substantial federal ques-

tion. Plaintiffs here urge that the dismissal is a decision by the Supreme Court on the merits of the case and is therefore binding on lower courts addressing substantially similar issues.

While we agree with plaintiffs that summary dispositions by the U. S. Supreme Court are decisions on the merits and are therefore binding on lower courts, it is equally true that those decisions extend only to "the precise issues presented and necessarily decided by those actions". *Mandel v Bradley*, 432 US 173, 176; 97 S Ct 2238; 53 L Ed 2d 199 (1977); *Metromedia, Inc, supra,* p 499. Moreover, summary actions "should not be understood as breaking new ground but as applying principles established by prior decisions to the particular facts involved". *Mandel, supra,* p 176.

A brief comparison of the regulations here and in *Queensgate* convinces us that the summary dismissal of *Queensgate* is not controlling. In the first place, subsections (2) and (4) of R 436.1333 prohibit all off-premise price advertising of alcoholic liquor by manufacturers, wholesalers, retailers, and outstate sellers. The regulation challenged in *Queensgate,* on the other hand, expressly *authorizes* all off-premise price advertising of alcoholic beverages by anyone in the chain of sale, with several limited exceptions.[2]

Second, the Michigan regulations also prohibit

[2] Ohio Administrative Code 4301:1-1-44 provides in pertinent part:

"No alcoholic beverages shall be advertised in Ohio except in the manner set forth in regulation 3 and as hereinafter provided.

"(A) As to advertising on the premises, holders of Class C, D, and G permits shall not advertise the price per bottle or drink of any alcoholic beverage, or in any manner refer to price or price advantage except within their premises and in a manner not visible from the outside of said premises.

"(B) Manufacturers and distributors of alcoholic beverages are permitted to advertise their products in Ohio.

"Holders of Class C, D, and G permits shall be authorized to advertise in newspapers of general circulation, radio and television, on billboards, calendars, in or on public conveyances and in regularly

retail licensees from advertising *brands* of liquor off the licensed premises. R 436.1327(1); 436.1333(2). The Ohio regulations differ in that they do not cover advertising of brands, but are aimed only at *price* advertising.

Third, Michigan rule 9 contains more extensive prohibitions on advertising than does the Ohio rule. Michigan attempts to regulate the types of publications in which certain licensees may advertise. R 436.1309(2) and (3). Liquor Control Commission approval is required for advertising in a program or publication for a special occasion, and for advertising in newspapers or periodicals other than those "published not less than quarterly and having a second class mailing permit". *Id.* The Ohio rules contain no such restrictions.

Finally, the Michigan rules prohibit advertising of "alcoholic liquor" by placing the liquor or an advertisement for it in a window facing outside the licensed premises. R 436.1315(2). In Ohio it is only *price or price advantage* which may not be advertised in this fashion.

Consequently, it appears that the *Queensgate* Court had before it a ban on advertising much less restrictive than the Michigan scheme. Only limited types of highly competitive advertising were prohibited by the Ohio regulations. The Michigan Liquor Control Commission, on the other hand, attempted to regulate substantially more than general price information. Based on this comparison, we conclude that *Queensgate* did not present the Supreme Court with the "precise" issues found here.

published magazines. Advertising may include the retail price of the original container or packages, but such advertising may not in any manner refer to price advantage".

## C

Plaintiffs also contend that the Twenty-first Amendment to the U. S. Constitution, which gives the states control over the "transportation or importation" of liquor into their territories, US Const, Am XXI, § 2, strengthens the case for upholding the commission's regulations by providing an additional presumption in favor of their validity. See *California v LaRue*, 409 US 109, 118-119; 93 S Ct 390; 34 L Ed 2d 342 (1972); *New York State Liquor Authority v Bellanca*, 452 US 714, 718; 101 S Ct 2599; 69 L Ed 2d 357 (1981).

Pursuant to the Twenty-first Amendment, a state may regulate the times, places, and circumstances under which liquor may be sold, even to the point of prohibiting its sale entirely. *Bellanca, supra*, p 715. The Twenty-first Amendment has been deemed primarily an "exception to the normal operation of the Commerce Clause". *Craig v Boren*, 429 US 190, 206; 97 S Ct 451; 50 L Ed 2d 397 (1976). As noted by the Supreme Court:

"Once passing beyond consideration of the Commerce Clause, the relevance of the Twenty-first Amendment to other constitutional provisions becomes increasingly doubtful. As one commentator has remarked: 'Neither the text nor the history of the Twenty-first Amendment suggests that it qualifies individual rights protected by the Bill of Rights and the Fourteenth Amendment where the sale or use of liquor is concerned'." *Craig, supra*, p 206.

See *Capital Cities Cable, Inc v Crisp*, 467 US —; 104 S Ct 2694, 2707-2708; 81 L Ed 2d 580, 597-598 (1984).

Accordingly, the Supreme Court has held that the presence of the Twenty-first Amendment did not operate to alter its customary analysis under either the due process clause, *Wisconsin v Constantineau*, 400 US 433; 91 S Ct 507; 27 L Ed 2d

515 (1971), the equal protection clause, *Craig, supra,* or, most recently, the establishment clause, *Larkin v Grendel's Den, Inc,* 459 US 116, 122, fn 5; 103 S Ct 505; 74 L Ed 2d 297 (1982) ("The State may not exercise its power under the Twenty-first Amendment in a way which impinges upon the Establishment Clause of the First Amendment.") See also *California Retail Liquor Dealers Ass'n v Midcal Aluminum, Inc,* 445 US 97; 100 S Ct 937; 63 L Ed 2d 233 (1980) (state's power to regulate liquor under Twenty-first Amendment is subject to federal anti-trust laws), *Dep't of Revenue v James B Beam Distilling Co,* 377 US 341; 84 S Ct 1247; 12 L Ed 2d 362 (1964) (state cannot tax liquor in violation of the export-import clause), and *Capital Cities Cable, Inc, supra* (state ban on liquor advertising preempted by regulations of the Federal Communications Commission). Our Supreme Court has stated that "if an individual has important interests which otherwise would be entitled to the protection of procedural due process, he cannot be denied this constitutional safeguard because the business in which he is engaged happens to involve alcoholic beverages". *Bundo v City of Walled Lake,* 395 Mich 679, 687; 238 NW2d 154 (1976).

The cases of *California v LaRue* and *New York State Liquor Authority v Bellanca, supra,* do not persuade us that we should afford these regulations a presumption of validity or otherwise alter our review of them under the *Central Hudson Gas* analysis for commercial speech.

The Supreme Court upheld state regulations in *Bellanca* which prohibited nude dancing, and the performance of various live and simulated sexual acts in *LaRue,* in establishments licensed by the respective states to sell liquor. The Court in both cases was careful to point out that the regulations in question did not prohibit all performances of

the kind described, but only those taking place in establishments licensed to sell liquor. *Bellanca, supra,* p 716; *LaRue, supra,* p 118. The regulations, therefore, were directed at the distribution of liquor, not at the suppression of constitutionally-protected expression. Those expressions were affected only incidentally by the state regulations. See *Lamar Outdoor Advertising, Inc v Mississippi State Tax Comm,* 701 F2d 314, 325-330 (CA 5, 1983), *rev'd on rehearing* 718 F2d 738 (CA 5, 1983). *Cf. Oklahoma Telecasters Ass'n v Crisp,* 699 F2d 490 (CA 10, 1983), *rev'd on other grounds* 467 US —; 104 S Ct 2694; 81 L Ed 2d 580 (1984). In contrast, the regulations here, which prohibit all off-premise price advertising, are directly aimed at constitutionally-protected commercial speech.

We therefore conclude that the Twenty-first Amendment does not require us to deal with restraints on freedom of speech any differently than we would if alcoholic beverages were not involved.

## D

Under the third step of the *Central Hudson Gas* analysis, the regulations here can be upheld only if they directly advance the state's interest in discouraging the artificial stimulation of alcohol consumption. Plaintiffs carry the heavy burden of justifying these restrictions on commercial speech. *Bolger v Youngs Drug Products Corp,* 463 US 60, 91, fn 20; 103 S Ct 2875; 77 L Ed 2d 469 (1983).

The Attorney General concedes that there is at least some correlation between general brand advertising of alcoholic beverages and levels of consumption. However, we note that such brand advertising in Michigan by manufacturers, wholesalers, and outstate sellers is permissible under current regulations. The Attorney General persua-

sively argues that in light of the numerous and pervasive advertisements concerning *brands* of alcoholic beverages found within this state, it is difficult to perceive how the addition of the element of *price* could have any measurable impact upon the level of alcohol consumption. We agree with the Attorney General's reasoning.

Plaintiffs' arguments are aimed more at the effects of *any* alcohol advertising than at the effects of a limited advertising ban such as that employed in Michigan. Plaintiffs have shown us no authority in support of their position that price advertising would have a direct impact upon consumption in the State of Michigan. In fact, several studies relied on in reported cases from other jurisdictions conclude that there is no significant relationship between direct price control of alcohol and its consumption. *Rice v Alcoholic Beverage Control Appeals Bd,* 21 Cal 3d 431; 579 P2d 476 (1978); *Seagram & Sons v Hostetter,* 16 NY2d 47; 209 NE2d 701 (1965). In *Hostetter,* the Court sustained a statute which tied the New York price of brand liquors to the national price. The Court cited studies of a commission appointed by the governor to reappraise the state's liquor law, which found no relation between temperance and the price of alcoholic beverages:

"The commission addressed itself, among other things, to the price of liquor in New York and the effect of price on temperance in the use of liquor. One of the basic assumptions of the statute then in effect was that, if the price of liquor were cheap, its consumption would increase and the policy effected by the statute was to sustain the price.

\* \* \*

"The commission's studies led it to believe that the assumed favorable relation of high-priced liquor to temperance was chimerical. \* \* \*

"The principal benefit from the minimum price requirement for liquor in New York went to the liquor interests. This served 'merely', said the commission, 'to insure profit margins of the various segments of the industry'. * * * 'The argument that high prices promote temperance in that they keep liquor out of the hands of those who should not have it' is 'unfounded' * * *.

"Its studies showed no correlation between consumption and prices, looking at the experience in States in which prices were high comared with those in which they were low." 16 NY2d 53-54. (Citation omitted.)

In *Rice, supra,* as well, the California Court cited studies which found little correlation between temperance and price maintenance, 21 Cal 3d 431, 457. If such studies are to be believed, we must find that, in Michigan, any additional impact on the level of consumption attributable to the absence of price advertisements would be negligible. Since Michigan now permits some advertisement of brands, it is permissible, for example, for a manufacturer to suggest that the public consume Brand X beer. Would it have any significant effect on consumption to additionally allow the information that Brand X is available for a certain price this week, or that Brand X is cheaper than Brand Y? Plaintiffs have failed to demonstrate that this is the case. In fact, as noted above, plaintiffs' arguments make sense mainly in the context of a *total* ban on advertising of beer, wine, and liquor— a situation which the Michigan regulatory scheme does not and has not contemplated.

Based on the record before us, we conclude that plaintiffs have failed to demonstrate how the regulations in question would directly advance temperance. Additionally, we are mindful of Justice Blackmun's observations in his concurrence to *Central Hudson Gas, supra,* pp 574-575:

"I seriously doubt whether suppression of information concerning the availability and price of a legally offered product is ever a permissible way for the State to 'dampen' demand for or use of the product. Even though 'commercial' speech is involved, such a regulatory measure strikes at the heart of the First Amendment. This is because it is a covert attempt by the State to manipulate the choices of its citizens, not by persuasion or direct regulation, but by depriving the public of the information needed to make a free choice."

Accordingly, we find 1979 AC, R 436.1309(2) and (3), 436.1315(2), 436.1327(1), and 436.1333(2) and (4) to be impermissible restraints on the freedom of commercial speech in violation of the First and Fourteenth Amendments of the United States Constitution and art 1, § 5 of the Michigan Constitution of 1963.[3]

## III

The constitutional right to engage in business is subject to the police power of the state to preserve the public health, safety, morals, and general welfare. See *Carolene Products Co v Thomson,* 276 Mich 172, 178; 267 NW 608 (1936). If a "real and substantial relationship" exists between regulations enacted pursuant to a state's police power and the health, safety, morals, or general welfare of the public, the regulations will be upheld unless they "needlessly * * * invade property or personal rights as protected by the Constitution * * *". *Grocers Dairy Co v Dep't of Agriculture Director,* 377 Mich 71, 76; 138 NW2d 767 (1966); *Carolene Products, supra,* p 178. A presumption of validity

[3] In so holding, we express no opinion as to whether art 1, § 5, of the Michigan Constitution of 1963 provides broader protection for speech than its federal counterpart. See, *e.g., People v Neumayer,* 405 Mich 341, 363, fn 16; 275 NW2d 230 (1979).

attaches to legislative or administrative remedies. *Carolene, supra.*

Despite the presumption of validity accorded the commission's regulations, we hold that a "real and substantial" relationship does not exist between them and the promotion of temperance for the reasons outlined above under Section II-D. Moreover, we do not believe that the police power, however strong, permits a state to enact measures for the welfare of its citizens which violate personal freedoms protected by both the state and federal constitutions. See *Carolene, supra.*

Reversed. No costs, public question being involved.