Per Curiam.
 

 Plaintiff appeals as of right from a Court of Claims order granting summary disposition under MCR 2.116(C)(8) to defendants. We affirm.
 

 Plaintiff is a for-profit corporation that provides medical diagnostic services through the use of a magnetic resonance imaging unit (mri unit). In order to acquire a second mri unit, plaintiff filed a petition with defendant Michigan Department of Public Health
 
 *227
 
 (mdph) for a certificate of need (con)
 
 [1]
 
 on June 30, 1995. In a proposed decision dated December 21, 1995, the mdph recommended denial of the application. Without waiting for the issuance of a final decision by the director of the mdph, plaintiff initiated this lawsuit against the mdph by filing a complaint in the Court of Claims alleging, among other things,
 
 [2]
 
 that specific sections of the CON review standards employed by the mdph created a monopoly in violation of the Michigan Antitrust Reform Act (ara), MCL 445.771
 
 et seq.;
 
 MSA 28.70(1)
 
 et seq.
 
 Defendant Michigan Certificate of Need Commission (mconc) was joined as a party in plaintiff’s second amended complaint, which also added a count for monetary relief. The Court of Claims granted summary disposition in favor of defendants, concluding that defendants’ actions were authorized by the Public Health Code and that defendants were exempted from the state antitrust laws under MCL 445.774(3); MSA 28.70(4)(3).
 

 We review motions for summary disposition de novo in order to determine “whether the moving
 
 *228
 
 party was entitled to judgment as a matter of law. MCR 2.116(C)(8) permits summary disposition when the opposing party has failed to state a claim upon which relief can be granted. . . . The court must accept as true all well-pleaded facts.”
 
 Stehlik v Johnson (On Rehearing),
 
 206 Mich App 83, 85; 520 NW2d 633 (1994) (citation omitted).
 

 At the heart of this appeal is the interpretation and applicability of the governmental exception to the state antitrust laws found in MCL 445.774(3); MSA 28.70(4)(3). The exception states in pertinent part:
 

 This act shall not be construed to prohibit, invalidate, or make unlawful any act or conduct of any unit of government, when the unit of government is acting in a subject matter area in which it is authorized by law to act....
 

 In granting defendants summary disposition, the Court of Claims concluded that “the relevant subject matter clearly encompasses the promulgation and implementation of standards for establishing whether a CON should be granted to an applicant.”
 

 Plaintiff argues that the procedure established by defendants to calculate the number of MRI procedures that would be performed by an additional mri unit (i.e., the demand for the unit) creates an illegal private monopoly. Plaintiff asserts that by requiring applicants for mri units to document the need for an additional unit by accessing the Michigan Health Data Corporation’s Michigan Inpatient Data Base (midb), defendants improperly delegated legislative authority to a private entity. Furthermore, plaintiff asserts that because access to the midb is limited to hospitals, the procedure necessarily created a monopoly that operated to exclude nonhospital applicants from obtaining
 
 *229
 
 a CON.
 
 [3]
 
 As a result, plaintiff asserts that when defendants created the procedure, they were not “acting in a subject matter area in which [they were] . . . authorized by law to act,” and were thus not exempt from the state antitrust laws.
 

 We disagree with plaintiff’s reading of the statutory exception. “Statutory interpretation is a question of law reviewed de novo on appeal.”
 
 People v Williams,
 
 226 Mich App 568, 570; 576 NW2d 390 (1997). The overriding goal guiding judicial interpretation of statutes is to discover and give effect to legislative intent.
 
 Tryc v Michigan Veterans’ Facility,
 
 451 Mich 129, 135; 545 NW2d 642 (1996);
 
 Williams, supra
 
 at 570;
 
 Knight v Limbert,
 
 170 Mich App 410, 413; 427 NW2d 637 (1988). The starting place for the search for intent is the language used in the statute.
 
 House Speaker v State Administrative Bd,
 
 441 Mich 547, 567; 495 NW2d 539 (1993);
 
 Williams, supra
 
 at 570. “Unless defined in the statute, every word or phrase therein should be accorded its plain and ordinary meaning, taking into account the context in which the words are used.”
 
 People v Hack,
 
 219 Mich App 299, 305; 556 NW2d 187 (1996). Accord
 
 People v Lee,
 
 447 Mich 552, 557-558; 526 NW2d 882 (1994).
 

 
 *230
 
 The “plain meaning rule” of statutory inteipretation is an objective standard of review, predicated on the assumption that there exists a cultural consensus about the meanings of a great number of words. As Justice Oliver Wendell Holmes, Jr., put it: “[W]e ask, not what this man meant, but what those words would mean in the mouth of a normal speaker of English .... [T]he normal speaker of English is merely a special variety ... of our old Mend the prudent man.” Holmes,
 
 The theory of legal interpretation,
 
 12 Harv L R 417, 417-418 (1899). It is this belief in common consensus, in commonly accepted meanings, that in turn underlies judicial confidence in the dictionary as a source of meaning. See, e.g.,
 
 Popma v Auto Club Ins Ass’n,
 
 446 Mich 460, 470; 521 NW2d 831 (1994) (“Reference to a dictionary is appropriate to ascertain what the ordinary meaning of a word is.”). However, because even the most common word can have a number of meanings, a court must also consider the context in which it appears in order to determine which of these ordinary meanings it carries in the statute under scrutiny.
 
 Hack, supra
 
 at 305.
 
 [4]
 

 We believe that the statutory language employed by the Legislature in MCL 445.774(3); MSA 28.70(4)(3) is plain and unambiguous and that the Court of Claims correctly ruled that defendants’ actions were exempted. The exception states that “any unit of government” is excepted from the provisions of the ara “when the unit of government is acting in a subject matter area in which it is authorized by law to act
 
 *231
 
 . As a preliminary matter, we note that both defendants fall within the definition of “unit of government” established in MCL 445.771(d); MSA 28.70(l)(d).
 
 [5]
 
 As for the “subject matter area” categorization, we conclude that these words establish an intentionally general region of authority, the extent or scope of which is determined by a legislative grant of authority. “Subject matter” is defined by
 
 Webster’s New World Dictionary of the American Language, Second College Edition
 
 (1984), p 1418, as “the thing or things considered in a book, course of instruction, discussion, etc.” If an applicable underlying statute either explicitly or impliedly gives the governmental unit the power to act in a specific area, then the governmental unit can be said to have been granted by law the substantive authority to act on “things” or matters falling within that given area. Further, the statute unambiguously states that the nature of the governmental act or conduct is irrelevant to a determination whether the exception applies. The exemption indicates that the state’s antitrust statutes do not apply to
 
 “any
 
 act or conduct” undertaken by the governmental unit, as long as the focus of that behavior is on a matter falling within the authorized subject-matter area. The adjective
 
 any
 
 clearly, signals that the category it is identifying will be all-inclusive. Definitions of the word “any” include “without limit” and “every.”
 
 Webster’s, supra,
 
 p 62. This intentionally chosen statutory language evidences a legislative desire not to restrict the applicability of the exception to
 
 *232
 
 only those actions that fall undeniably within the statutory grant of power.
 
 [6]
 

 Plaintiff asserts that if the conduct in question is ultra vires, then such conduct necessarily falls outside the governmental unit’s authorized subject-matter area and the statutory exception would not apply. This proposition evidences the central confusion in plaintiff’s argument. Specifically, plaintiff has inappropriately combined an examination of the validity of the con review standards with an examination of whether defendants’ actions are exempt under MCL 445.774(3); MSA 28.70(4)(3). As the Court of Claims astutely observed, “A particular action may be within a unit of government’s subject matter area despite being an ultra vires act.” In other words, while an action may be judged to be invalid because it falls outside the scope of power granted, it can at the same time be statutorily exempt from the state antitrust laws. Simply because the action is not subject to suit under the state antitrust laws does not mean that it is immune from individual challenge and judicial scrutiny.
 
 [7]
 
 For example, we do not believe it
 
 *233
 
 would be inconsistent for a court to conclude that an agency rule regulating the advertising of alcohol does not bear a substantial relationship to achieving a legitimate state goal,
 
 [8]
 
 while at the same time concluding that the agency’s conduct in promulgating and applying the invalid rule fell within the scope of the authorized subject-matter area for purposes of being exempt from state antitrust laws.
 

 We agree with the Court of Claims that both defendants are statutorily authorized to act in the general subject-matter area of regulating Michigan’s CON program. The grant of authority to the mdph is found throughout part 222 of the Public Heath Code.
 
 [9]
 
 The MCONC’s grant of authority is also found in part
 
 *234
 
 222 of the Public Health Code,
 
 [10]
 
 as well as in subsections 7(1) and 8(1)(1) of the Administrative Procedures Act.
 
 [11]
 
 Accordingly, we hold that defendants’ conduct with regard to plaintiff’s application for an additional mri unit was statutorily exempt from attack on antitrust grounds. We therefore affirm the Court of Claims’ grant of summary disposition dismissing plaintiff’s antitrust claim.
 

 Affirmed.
 

 [1]
 

 Department of Community Health:
 
 Certificate of need review standards for magnetic resonance imaging services
 
 published in
 
 Michigan Register.
 
 1997 MR 2, subsection 2(l)(x), p 139 (effective July 1, 1997). Under subsection 7(1) of the Administrative Procedures Act (apa), MCL 24.201
 
 et seq.;
 
 MSA 3.560(101)
 
 et seq.,
 
 con review standards are not considered to be rules. MCL 24.207(1); MSA 3.560(107)(1). Accordingly, CON review standards are not subject to the mandatory procedures set forth for rule promulgation. Subsection 5(1) of the apa indicates that a con is considered to be a license. MCL 24.205(1); MSA 3.560(105)(1) (“ ‘License’ includes the whole or part of an agency permit, certificate, ... or similar form of permission required by law .... ”).
 

 [2]
 

 The cause of action included five counts. Count v addressed the alleged violation of state antitrust laws. The first four counts were summarily dismissed by the Court of Claims for lack of subject-matter jurisdiction. Both plaintiff and defendants agree that only count v is before this Court for review.
 

 [3]
 

 Compare
 
 Coffman v State Bd of Examiners in Optometry,
 
 331 Mich 582, 588; 50 NW2d 322 (1951) (“hold[ing] that the legislature could not delegate to the international association of boards of examiners in optometry the rating of optometric schools or colleges”), with
 
 Blue Cross & Blue Shield of Michigan v Governor,
 
 422 Mich 1, 53; 367 NW2d 1 (1985) (observing that a statutory reference to a body of private guidelines was proper). However since this lawsuit was initiated, the review standards have been significantly rewritten.
 
 Certificate of need review standards,
 
 n 1,
 
 supra.
 
 These new review standards no longer indicate that an applicant need reference the midb when documenting the need for an additional mri unit.
 
 Id.,
 
 sections 12, 13.
 

 [4]
 

 As Holmes observed: “A word generally has several meanings, even in the dictionary. You have to consider the sentence in which it stands to decide which of those meanings it bears in the particular case . . . .” Holmes,
 
 supra,
 
 12 Harv L R 417.
 

 [5]
 

 “ ‘Unit of government’ means this state or an agency, instrumentality, political subdivision, or public corporation of this state . . . .” MCL 445.771(d); MSA 28.70(1)(d).
 

 [6]
 

 Although we need not look beyond the exception’s plain and unambiguous language, we do note that the commentary that accompanies the statute includes the following observations:
 

 As to subsection (3), . . . units of government are generally exempted from this Act. The issue for an exemption is whether the conduct in question was in a subject matter area where the unit of government in general was authorized by law (expressly or impliedly) to act,
 
 not whether the precise conduct in question was specifically authorized by law.
 
 [Emphasis added.]
 

 [7]
 

 We are mindful that in a recent decision, another panel of this Court defined the constitutional “authorized by law” standard of review found at Const 1963, art 6, § 28 in the following manner: “an agency’s decision that ‘is in violation of statute [or constitution], in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures
 
 *233
 
 resulting in material prejudice, or is arbitrary and capricious,’ is a decision that is
 
 not
 
 authorized by law.”
 
 Northwestern Nat’l Casualty Co v Comm’r of Ins,
 
 231 Mich App 483, 488; 586 NW2d 563 (1998), quoting
 
 Brandon School Dist v Michigan Ed Special Services Ass’n,
 
 191 Mich App 257, 263; 477 NW2d 138 (1991).
 

 We do not believe, however, that our decision here is in direct conflict with that of the Court in
 
 Northwestern Nat’l.
 
 In
 
 Northwestern Nat’l,
 
 the examination of the phrase “authorized by law” was focused on how it is to be defined as a judicial standard of review of agency action that is judicial or quasi-judicial in nature. Accordingly, the discussion in
 
 Northwestern Nat’l
 
 is limited to the constitutional context in which the phrase appears. Similarly, in the case at hand, our examination of the “authorized by law” language is necessarily limited to the statutory context in which it appears. The question we are addressing is not whether the con review standards or agency action based on those standards can withstand constitutional scrutiny upon appellate review. Rather, we are focusing on whether when it established those standards, the mdph was exempted from state antitrust laws under the provisions of the relevant statutory exception.
 

 [8]
 

 See, e.g.,
 
 Michigan Beer & Wine Wholesalers Ass’n v Attorney General,
 
 142 Mich App 294, 312-313; 370 NW2d 328 (1985).
 

 [9]
 

 See MCL 333.22217; MSA 14.15(22217), MCL 333.22221; MSA 14.15(22221), MCL 333.22225 to 333.22227; MSA 14.15(22225) to 14.15(22227), MCL 333.22231; MSA 14.15(22231), MCL 333.22233; MSA 14.15(22233), MCL 333.22235; MSA 14.15(22235), MCL 333.22237; MSA 14.15(22237), MCL 333.22247; MSA 14.15(22247), and MCL 333.22255; MSA 14.15(22255).
 

 [10]
 

 See MCL 333.22215; MSA 14.15(22215), MCL 333.22217; MSA 14.15(22217), MCL 333.22221; MSA 14.15(22221), MCL 333.22225 to 333.22226; MSA 14.15(22225) to 14.15(22226), MCL 333.22231; MSA 14.15(22231), and MCL 333.22255; MSA 14.15(22255).
 

 [11]
 

 MCL 24.207©; MSA 3.560(107)©, MCL 24.208©; MSA 3.560(108)©.