*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

MOTHERING JUSTICE, MICHIGAN ONE FAIR
WAGE, MICHIGAN TIME TO CARE,
RESTAURANT OPPORTUNITIES CENTER OF
MICHIGAN, JAMES HAWK, and TIA MARIE
SANDERS,

        Plaintiffs-Appellees,

v

ATTORNEY GENERAL,

        Defendant-Appellee,

and

STATE OF MICHIGAN,

        Defendant-Appellant.

FOR PUBLICATION
January 26, 2023

No. 362271
Court of Claims
LC No. 21-000095-MM

---

Before: M. J. KELLY, P.J., and MURRAY and RIORDAN, JJ.

RIORDAN, J. (*concurring*).

I concur with JUDGE MURRAY's opinion and join it in full.

However, given that competing Attorney General formal opinions have contributed to the ongoing uncertainty in our state as to whether 2018 PA 368 and 2018 PA 369 are valid, I write separately for two reasons. First, to further consider the trial court's dubious conclusion that a 1963 Attorney General formal opinion should be considered more persuasive and given "more weight than subsequent opinions because Attorney General Kelley issued his opinion shortly after the Michigan Constitution was ratified." Second, to express my doubt that such Attorney General

formal opinions are binding upon state executive agencies and the Legislature, which counsel for the Legislature claims is so pursuant to "tradition."[1]

The trial court cited the formal opinion of Attorney General Frank Kelley, OAG 1963, No. 4303, pp 309-312 (March 6, 1964), as favorable authority for its ultimate holding in the matter before us. In doing so, it rejected a contrary formal opinion of Attorney General Bill Schuette, OAG 2018, No. 7306, pp 1-4 (December 3, 2018), and it disregarded the absence of a constitutional prohibition against the Legislature's action here by reasoning that "Attorney General Schuette issued his opinion in the context of this matter." While, "in contrast, Attorney General Kelley's opinion was issued within a year after the people ratified the Michigan Constitution and stood for 55 years." Thus, notably, the trial court concluded that Attorney General Kelley's formal opinion was "entitled to more weight" because it was issued closer to the 1963 ratification of our Constitution.

In the judicial context, it is true that "those cases decided at a time proximate to the ratification of the constitution are important in that they better reflect the meaning of the language of the constitution at the time it was written." *In re Requests of Governor and Senate on Constitutionality of 1972 PA 294*, 389 Mich 441, 470; 208 NW2d 469 (1973). However, this is subject to the fact that such earlier cases may be overruled by subsequent cases. The trial court ignores the application of this principle to the formal opinions that it considered and, instead, creates a new principle, that of a one-way ratchet. Following the trial court's reasoning, earlier formal opinions are conclusively entitled to more weight than subsequent formal opinions because those earlier opinions will have necessarily been issued closer to the ratification of the Constitution or statutory question than any subsequent formal opinion.

In contrast, as JUDGE MURRAY alludes to in the majority opinion, correct reasoning trumps longevity. Unlike cases involving the Constitution, the Legislature may override an incorrect statutory interpretation. See, e.g., *Diggins v. Jackson*, 164 P3d 647, 649 (Alas, 2007) (MATTHEWS, J., *concurring*). Or, as in the case before us, there is no prohibition barring a subsequent Attorney General from overturning a previous opinion issued by his office. As Justice Brandeis wrote in *Burnet v Coronado Oil & Gas Co,* 285 US 393, 407-408; 52 S Ct 443; 76 L Ed 815 (1932) (Brandeis, J., *dissenting*), "[t]he Court bows to the lessons of experience and the force of better reasoning." The same principle applies to the formal opinions cited in the trial court's opinion. Unfortunately, for the purpose of underpinning its ultimate conclusion, the trial court made short shrift of the application of this admonition when considering Attorney General Kelley's 1963 opinion and Attorney General Schuette's 2018 opinion. Instead, the trial court incorrectly reasoned that older simply had to be better.

Next, occasionally, and without any substantive analysis, this Court has stated in passing that formal opinions are binding upon executive agencies. See, e.g., *Mich Beer & Wine Wholesalers Ass'n v Attorney Gen*, 142 Mich App 294, 300; 370 NW2d 328 (1985) ("While such opinions do not have the force of law, and are therefore not binding on courts, they have been held

---

[1] Although not expressly noted by the trial court in this case, it is beyond dispute that formal opinions are not binding upon the courts. *Martin v Murray*, 309 Mich App 37, 41 n 4; 867 NW2d 444 (2015).

to be binding on state agencies and officers."). I question the accuracy of these statements. Our Supreme Court recently noted that "formal opinions do not bind the courts, and whether the formal opinions bind even other governmental agencies is open to question." *League of Women Voters of Mich v Secretary of State*, 508 Mich 520, 567 n 24; 975 NW2d 840 (2022) (cleaned up). See also *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 597 n 57; 957 NW2d 731 (2020) ("We have left open the question whether the formal opinions bind even other governmental agencies."); *Danse Corp v Madison Hts*, 466 Mich 175, 182 n 6; 644 NW2d 721 (2002) ("Indeed, the extent to which a governmental agency is even bound by an opinion of the Attorney General is open to question.").

The uncertainly in our law regarding the nature of formal opinions apparently began with *Traverse City Sch Dist v Attorney Gen*, 384 Mich 390; 185 NW2d 9 (1971). In that case, our Supreme Court stated that "[a]lthough an opinion of the Attorney General is not a binding interpretation of law which courts must follow, it does command the allegiance of state agencies." *Id*. at 410 n 2. However, none of the three cases cited by *Traverse City Sch Dist* in support of that statement actually stand for that proposition.[2] And the Court subsequently distanced itself from that proposition in *Sch Dist of East Grand Rapids v Kent Co Tax Allocation Bd*, 415 Mich 381, 394; 330 NW2d 7 (1982), explaining that "the opinion of the Attorney General that a statute is unconstitutional does not have the force of law and certainly does not compel agreement by a governmental agency[.]"

The authority of the Attorney General to issue formal opinions is found in MCL 14.32, which provides as follows:

It shall be the duty of the attorney general, when required, to give his opinion upon all questions of law submitted to him by the legislature, or by either branch thereof, or by the governor, auditor general, treasurer or any other state officer, and also to notify the county treasurer of the proper county, of the neglect or refusal of any prosecuting attorney to make the annual report to the attorney general required of him by law.

Notably absent from MCL 14.32 is any indication that a formal opinion is binding upon the requesting party, much less the executive branch, any of its departments or agencies, or the Legislature. There is no constitutional or statutory language to support that the Attorney General may either nullify laws or prevent other executive agencies from acting contrary to his or her opinion. The most natural reading of the statute, in my judgment, is that the Attorney General may provide a nonbinding opinion on a submitted question of law, as would occur when any client asks his or her legal counsel for advice. Compare *McCartney v Attorney Gen*, 231 Mich App 722, 732; 587 NW2d 824 (1998) (holding that letters from the Governor to the Attorney General concerning

---

[2] *Fowler v Kavanagh*, 63 F Supp 167, 168-169 (ED Mich, 1944), stated that "[a]n opinion by the Attorney General, though entitled to great weight, is not controlling." *Detroit Edison Co v State*, 320 Mich 506; 31 NW2d 809 (1948), did not mention Attorney General opinions whatsoever. Finally, *David Walcott Kendall Mem Sch v Grand Rapids*, 11 Mich App 231, 237; 160 NW2d 778 (1968), simply noted that "we refer to an opinion of the attorney general while noting that we are not precedentially bound to his conclusions."

legal advice were exempt from disclosure under the Freedom of Information Act, MCL 15.231 *et seq*., because the Governor and the Attorney General had an attorney-client relationship, and "[t]o hold otherwise would have a chilling effect on the Governor's ability to seek advice from his counsel"). If the Legislature had intended to render formal opinions binding upon executive agencies when it enacted MCL 14.32, it would have presumably done so through language clearly indicating that intent. "[T]he Legislature does not, one might say, hide elephants in mouseholes . . . ." *People v Arnold*, 502 Mich 438, 480 n 18; 918 NW2d 164 (2018) (quotation marks and citation omitted).

Other statutes, in contrast, expressly provide the Attorney General with affirmative powers. See, e.g., MCL 14.28 ("The attorney general shall prosecute and defend all actions in the supreme court, in which the state shall be interested, or a party . . . ."); MCL 14.101 ("The attorney general of the state is hereby authorized and empowered to intervene in any action heretofore or hereafter commenced in any court of the state whenever such intervention is necessary in order to protect any right or interest of the state, or of the people of the state."). The fact that the Attorney General was not given the affirmative power to require executive agencies to act in accordance with his or her formal opinions in MCL 14.32, or any other statute, is compelling evidence that the Attorney General does not have such power. Further, there is no indication that this statutory language may be amended by tradition in the Attorney General's Office, as counsel for the Legislature implied during oral argument.

There are several other reasons why concluding that formal opinions are binding upon executive agencies would be inconsistent with the text and structure of our Constitution, particularly the separation-of-powers provision, Const 1963, art III, § 2, which provides that "[n]o person exercising powers of one branch shall exercise powers properly belonging to another branch."

First, Const 1963, art V, § 1 provides that "the executive power is vested in the governor." "The Attorney General, albeit a constitutional officer, is a member of the executive branch and thereby constitutionally subservient to the Governor as repository of the executive power of the state." *Lucas v Bd of Co Rd Comm'rs of Wayne Co*, 131 Mich App 642, 663; 348 NW2d 660 (1984). Concluding that formal opinions are binding upon executive agencies places the Attorney General above the Governor herself with respect to enforcement of the law. In other words, while the Attorney General is an inferior officer to the Governor under our Constitution, giving the Attorney General's formal opinions binding effect interferes with the Governor's executive responsibility to "take care that the laws be faithfully executed." Const 1963, art V, § 8.

Second, under Const 1963, art VI, § 1, the judiciary has the "constitutional authority to construe the law." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 102; 754 NW2d 259 (2008). If formal opinions are binding upon executive agencies, then the Attorney General has the power to decide the law for the entire executive branch, thereby essentially becoming a court of original jurisdiction. In such instances, the Attorney General would be passing conclusive judgment, not advising, on the law. This reasoning is directly contrary to the constitutional principle that the responsibility to rule on the law is vested with the judiciary. See *id*.

Third, Const 1963, art IV, § 1 provides that "the legislative power of the State of Michigan is vested in a senate and a house of representatives." This includes the power to override a

gubernatorial veto. See Const 1963, art IV, § 33. But if formal opinions are binding upon executive agencies, then a formal opinion declaring that a law enacted by the Legislature is unconstitutional would have the effect of being an Attorney General "veto" that the Legislature could not override. In such a situation, only a court could override that "veto." The separation of powers simply does not contemplate such a peculiar arrangement which vests an imbalance of power in the Attorney General to the unconstitutional detriment of the Legislature and the executive.[3]

Fourth, concluding that formal opinions are binding upon executive agencies would, in some circumstances, give the Attorney General greater authority to expound upon the law than our Supreme Court itself. In this regard, Const 1963, art III, § 8 provides that "[e]ither house of the legislature or the governor may request the opinion of the supreme court on important questions of law upon solemn occasions as to the constitutionality of legislation after it has been enacted into law but before its effective date." In other words, that constitutional provision grants the Court the authority to issue an advisory opinion concerning the constitutionality of legislation. However, as explained in *Anway v Grand Rapids Ry Co*, 211 Mich 592, 603; 179 NW 350 (1920),

> such opinions are regarded as expressing the views of the justices, and not a judicial determination of the question by the court; and such opinions are not regarded as binding upon the Legislature, the executive, or the court itself; indeed, the court does not act as a court in rendering such opinions, but as the constitutional advisors of the other departments of the government.

Thus, for example, if the Court issued an advisory opinion concluding that a particular statute is unconstitutional before it goes into effect, executive agencies would not be required to follow that opinion and would instead be able to enforce the law regardless. In contrast, if the Attorney General issued a formal opinion similarly concluding that the same statute is unconstitutional before it goes into effect, then, under the present deference accorded formal opinions, executive agencies would be required to follow that opinion. Whereas, those same agencies and the Legislature would not be bound by a similar decision by the Supreme Court. Consequently, the formal opinion of the Attorney General would have more force than an advisory opinion from our Supreme Court, which is incongruous in light of the fact that our Constitution vests judicial power in the judiciary. Const 1963, art VI, § 1.

Concluding that formal opinions are not binding upon executive agencies would hardly make Michigan an outlier. Numerous states treat Attorney General opinions as nonbinding legal advice. See, e.g., *Clark Co Office of Cornor/Med Examiner v Las Vegas Review-Journal*, 136 Nev 44, 57 n 5; 458 P3d 1048 (2020) ("[W]hile Attorney General opinions are not binding legal authority, they are of persuasive legal significance and may elucidate legal questions for the purpose of guiding public agencies."); *Greenwood v Estes*, 210 Kan 655, 661; 504 P2d 206 (1972) ("While an opinion of an attorney general may be persuasive, it is meither [sic] conclusive nor

---

[3] Formal opinions cannot be binding upon the Legislature itself, at least to the extent that the Legislature would be precluded from enacting a law deemed unconstitutional by the Attorney General. Even a court cannot prevent the Legislature from enacting a law. See *Auto Club of Mich Committee for Lower Rates Now v Sec of State*, 195 Mich App 613, 624; 491 NW2d 269 (1992).

binding, and the recipient of it is free to follow it or not as he chooses."). See also *Yes on Prop 200 v Napolitano*, 215 Ariz 458, 465; 160 P3d 1216 (Ariz Ct App, 2007) (declining to issue a writ of mandamus against an Attorney General opinion because "the responsibility to declare existing law and the responsibility to advise concerning it are separate and distinct," and while "[i]t is the responsibility of the courts to declare existing law," "it is the responsibility of the Attorney General to advise state government concerning the law when requested to do so"). It is true that other states, in contrast, treat Attorney General opinions as binding upon at least the requesting state agency or official, if not all state agencies and officials. See, e.g., *State ex rel York v Turpen*, 681 P2d 763, 765 (Okla, 1984) ("While in many states such an Attorney General's opinion is merely advisory, in this state it has been held such an opinion is binding upon the state official affected by it and it is their duty to follow and not disregard those opinions."). Yet, even in some of the latter states, Attorney General opinions are not given the impossibly deferential status that they are in Michigan.

The Oklahoma Supreme Court, for example, has ruled that "an agency's obedience to the legal advice of the Attorney General—whether considered binding or merely advisory—effect[s] adoption of the Attorney General's opinion as a rule," and as a result, "after an agency's adoption of an Attorney General's advice as a basis for its standard of legal conduct, the procedural remedy of a declaratory-relief suit afforded by the Administrative Procedures Act [is] available to test the validity of the agency's *de facto* rule." *Independent Sch Dist No I-20 of Muskogee Co v Oklahoma State Dep't of Ed*, 65 P3d 612, 623 (Okla, 2003) (citations omitted).[4]

In our federal system, 28 USC 512 provides that "[t]he head of an executive department may require the opinion of the Attorney General on questions of law arising in the administration of his department."[5] That statute is similar to MCL 14.32, which grants the Attorney General the power to issue formal opinions but is silent as to whether those opinions are binding upon executive agencies. As noted in *Co of Santa Clara v Trump*, 267 F Supp 3d 1201, 1213 (ND Cal, 2017), 28 USC 512 "does not address whether such an opinion would bind the relevant department," and as a result, "the law is unsettled on whether such opinions are binding on other agencies."

Presently, U.S. Attorney General opinions are issued by the Office of Legal Counsel (OLC) pursuant to 28 CFR 0.25(a). Federal agencies have treated such legal opinions as "binding" as a matter of expediency, not necessarily as a matter of law:

> Although subject to almost two hundred years of debate and consideration, the question of whether (and in what sense) the opinions of the Attorney General, and, more recently, the Office of Legal Counsel, are legally binding within the executive branch remains somewhat unsettled. Some have argued that Attorney General opinions "should be considered as law," binding on executive branch officials "until withdrawn by the Attorney-General or overruled by the courts." Others, in

---

[4] Notably, the Michigan Administrative Procedures Act, MCL 24.201 *et seq*., specifically exempts "[a] formal opinion of the attorney general" from the definition of "rule." MCL 24.207(b).

[5] In addition, 28 USC 511 concerns Attorney General opinions for the President, and 28 USC 513 concerns Attorney General opinions for the Secretaries of military departments.

contrast, have taken the view that Attorney General opinions are "merely advisory," available to aid the heads of departments "in forming a judgment on questions of law." Still others, including the Supreme Court, have taken the view that the opinions of the Attorney General should be followed within the executive branch, without addressing whether that normative judgment is legally derived. Few, however, dispute the proposition that whether for legal reasons, to promote uniformity and stability in executive branch legal interpretation, or to avoid the personal risk of being "subject to the imputation of disregarding the law as officially pronounced," executive branch agencies have treated Attorney General (and later the Office of Legal Counsel) opinions as conclusive and binding since at least the time of Attorney General William Wirt. [Randolph Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52 Admin L Rev 1303, 1318 (2000) (citations omitted).]

Thus, one constitutional law professor has stated that "OLC's legal opinions are treated as authoritative and binding within the executive branch unless 'overruled' by the Attorney General or the President." Trevor W Morrison, *Constitutional Alarmism*, 124 Harv L Rev 1688, 1711 (2011). See also *Pub Citizen v Burke*, 655 F Supp 318, 321-322 (DCDC, 1987) ("As interpreted by the courts, an Attorney General's opinion is binding as a matter of law on those who request it until withdrawn by the Attorney General or overruled by the courts.").[6]

But, even if U.S. Attorney General opinions are properly understood as binding upon federal agencies, that perhaps is a natural function of the fact that the U.S. Attorney General is nominated by and serves at the pleasure of the President. See *Free Enterprise Fund v Pub Co Accounting Oversight Bd*, 537 F3d 667, 682 (CA DC, 2008), aff'd in part and rev'd in part on other grounds, 561 US 447 (2010) (explaining that the U.S. Attorney General serves at the pleasure of the President). Or, as explained by Justice Scalia, "[i]t is not for us to determine, and we have never presumed to determine, how much of the purely executive powers of government must be within the full control of the President. The Constitution prescribes that they *all* are." *Morrison v Olson*, 487 US 654, 709; 108 S Ct 2597; 101 L Ed 2d 569 (1988) (Scalia, J., *dissenting*) (emphasis in original).

Conversely, in Michigan, the Governor does not nominate the Attorney General, nor does she serve pursuant to the prerogative of the Governor. Instead, the Attorney General is independently elected and there is no provision that the Governor can unilaterally remove her from office. See Const 1963, art V, § 21. In fact, our Constitution expressly indicates that the Attorney General *does not* serve at the pleasure of the Governor. See Const 1963, art V, § 3 ("When a single executive is the head of a principal department, *unless elected or appointed as otherwise provided in this constitution*, he shall be appointed by the governor by and with the advice and consent of the senate and he shall serve at the pleasure of the governor.") (emphasis added). Therefore, the

---

[6] According to *Burke*, this general rule is not inflexible. *Burke* continued: "[T]his general rule has been held not to apply when the matter is within the proper discretion of a department official. In those circumstances an opinion is not controlling in a proper area of discretion. Under such circumstances an opinion would be merely advisory." *Id*. at 322 (cleaned up).

apparent rationale in the federal system for treating U.S. Attorney General opinions as binding—the desirability of "uniformity and stability in executive branch legal interpretation," Moss, 52 Admin L Rev at 1318—has far less force in Michigan, where the Governor and the Attorney General may be at odds. That is, "the independent election of the state attorney general creates a quite different relationship with the governor's subordinates than the Office of Legal Counsel has with other federal officials, all of whom are subordinate to the same chief executive." Justin R Long, *State Constitutional Etudes: Variations on the Theme of a Contemporary State Constitutional Problem*, 60 Wayne L Rev 69, 114 n 242 (2014). For these reasons, analogizing the federal system to our system in Michigan is not persuasive.

To summarize, the question of whether formal opinions issued by the Attorney General in our state are binding upon executive agencies and the Legislature is unsettled in our caselaw and finds scant support in the relevant statutory language itself. More importantly, concluding that those formal opinions are binding upon executive agencies raises serious constitutional problems. Additionally, there is a split of authority in states across the country as to the binding nature of such opinions, with many states recognizing that those opinions cannot be binding upon executive agencies. Even in the federal system, where it seems there is an acceptance that U.S. Attorney General opinions are binding upon federal agencies, there are far less separation-of-powers restrictions than in Michigan as the U.S. Attorney General serves at the pleasure of the President, whereas the Michigan Attorney General serves independently of the desires of the Governor.

Accordingly, I respectfully urge the courts of this state, as well as the other two branches of our state government, to carefully consider whether giving the Attorney General through her formal opinions binding authority over executive agencies and the Legislature is consistent with our Constitution.[7]

/s/ Michael J. Riordan

---

[7] "To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained?" *Marbury v Madison*, 5 US (1 Cranch) 137, 176; 2 L Ed 60 (1803).