OPINION
CARPENETI, Justice.
I. INTRODUCTION
Is a non-settling defendant tortfeasor entitled to offset against his liability to the plaintiff the amount of a settlement between the plaintiff and a settling defendant? We conclude that under a pure several Hability regime such as ours the non-settling defendant is entitled to an offset only to the extent of the settling defendant's share of the damages.
A jury found Petrolane Incorporated and Gary Robles, but not Shoreside Petroleum, liable for a propane tank explosion that severely injured Robles and Robert Gannaway. We remanded for a new trial on whether Shoreside could have been liable under a negligence theory excluded by the trial court. The remand required reconsideration of the comparative fault of all of the parties, but maintained the first jury's findings as to Petrolane, Robles, and Gannaway. Before the first trial, Gannaway and Petrolane had settled: In return for a cash payment from Petrolane, Gannaway assigned to Petrolane ninety percent of any award he might obtain from Robles. After the second trial, the superior court reduced Robles's liability to Gannaway by the full settlement amount. Because under a several liability regime such as ours Robles is entitled to an offset only to the extent of Petrolane's share of the damages, we reverse on this issue. Petrolane also appeals the second trial court's decision to instruct the jury that Petrolane and Robles must be at least one percent liable. *1021 Because we find no error in this instruction, we affirm on this issue.
II. FACTS AND PROCEEDINGS
The factual background of this case was set out in our opinion in Robles v. Shoreside Petroleum, Inc.[1] In brief, Gary Robles and his customer Robert Gannaway were injured in October 1998 when Gannaway's old and corroded propane tank that Robles was filling exploded at the Tesoro station leased and operated by Robles. Gannaway sued Robles, Shoreside Petroleum, Inc., the propane supplier, and Petrolane Incorporated, Shore-side's wholesale propane distributor; Robles sued Shoreside and Petrolane. Before the first trial, Petrolane and Shoreside settled with Gannaway, paying him $400,000 in exchange for releasing both companies from all claims and assigning them ninety percent of his claims against Robles.
The first jury found Petrolane and Robles equally negligent in causing the accident and allocated half the liability for the accident to each, and the superior court entered judgment accordingly: Petrolane and Robles were each liable for fifty percent of Ganna-way's damages of $358,379.73 and Petrolane was liable to Robles for half of his damages of $871,216.19. Superior Court Judge Michael Wolverton's judgment incorporated Gannaway's pre-trial settlement, offsetting Robles's award against Petrolane by Ganna-way's award against Robles, and ordering Petrolane to pay Robles the difference.[2]
We reversed and remanded for "retrial on the issue of Shoreside's negligent failure to warn and on the related issues of causation and comparative fault," [3] but noted that there was "no reason to disturb the jury's determination on the issue of overall damages." [4] This outcome also made it unnecessary for us to address the superior court's incorporation of the Gannaway settlement into the final judgment.[5]
Before the second trial, Petrolane and Shoreside renewed their argument that their settlement with Gannaway made them assignees of his claims, and that they accordingly were entitled to reduce the amount of damages they owed Robles by the amount Robles was liable to Gannaway. - Robles in turn asserted that he was entitled to reduce his liability to Gannaway by the amount Gannaway received from the other defendants in his settlement-meaning he effectively owed no damages to Gannaway. Superior Court Judge Eric Sanders, to whom the case was assigned on remand,; interpreted language from our decision in Universal Motors, Inc. v. Neary[6] as requiring prior settlements to reduce a plaintiff's trial verdict by the full amount of the settlements rather than reducing it by the percentage of fault attributed to settling tortfeasors. Judge Sanders, considering the outcome "unfair," reluctantly concluded that Neary compelled him "to agree with Robles's position, even if the decision would, in all likelihood, be reversed."
Judge Sanders informed the second jury in Instruction No. 7 of the first jury's determinations that both Petrolane and Robles were negligent, that their negligence was a cause of the harm, and that Shoreside negligently trained Robles. The jury was told the court (as opposed to another jury) had made these determinations and was instructed not to reexamine these issues or discuss why the court decided them.
While the second jury concluded that Shoreside, Petrolane, and Robles were all negligent, it found that only Petrolane and Robles's negligence was a legal cause of the harm. The jury attributed 56.25% of the responsibility to Robles, and 48.75% of the responsibility to Petrolane.
Petrolane appeals the superior court's decision that full offset was required and the superior court's Instruction No. 7.
*1022 III. STANDARD OF REVIEW
We review questions of law and a trial court's application of law to fact de movo, adopting the rule of law most persuasive in light of precedent, reason, and policy.[7] We also review de movo jury instructions to which timely objection was made.[8]
IV. DISCUSSION
A. The Superior Court Erred in Applying a Full Offset.
Petrolane's first argument on appeal is that the superior court erred in ruling that under AS 09.17.080(d) the pre-trial settlement between Gannaway, Shoreside, and Petrolane extinguished Robles's obligation to pay his proportion of Gannaway's damages to Petrolane following the second trial. Alaska Statute 09.17.080(d) states: "The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault." [9]
1. Robles is entitled to a proportionate share offset for Petrolane's settlement with Gannaway.
Upon remand, Judge Sanders raised the issue of whether "Petrolane and Shoreside, having received an assignment from Robert Gannaway for money Gary Robles owes him, are entitled to a credit for what they may be required to pay Robles as a result of this court's eventual judgment."[10] The court concluded "that Robles owes nothing for Gannaway's damages despite a jury finding of fault against Robles," because our Neary decision "supports Robles's argument that he is entitled to offset amounts Gannaway received from other defendants." The court noted that this result was "inconsistent with the principles behind Alaska's several liability statute," but believed that Neary required this outcome.
Petrolane offers five reasons why the superior court's holding was erroneous, arguing that (1) the superior court's decision is based only on "Neary dicta," and that, as the superior court suggested, Neary was distinguishable because it involved the threat of "double recovery" in multiple lawsuits; (2) the superior court's decision contradicts the plain language of AS 09.17.080(d); (8) the decision runs against case law in other jurisdictions and the "near-universal rule that [full] credit [is] inapplicable in jurisdictions in which joint-and-several liability hals] been modified or abolished;" (4) the voters have indicated a clear preference for individual defendants to be liable for their proportion of fault; and (5) allowing non-settling tortfeasors to "receive the benefit of a favorable settlement negotiated by the plaintiff" creates "a strong disincentive to settle cases."
Robles replies that past cases, including Neary, require that "payment received by a plaintiff must be deducted by the damages recoverable" from other tortfeasors so that plaintiffs may not collect more than the jury's final determination of their damages. However, the nature of an offset for a prior *1023 settlement under this version of subsection .080(d) is a question of first impression, and Robles fails to squarely address whether full offsets are appropriate under pure several liability. As explained below, we agree with Petrolane and adopt the proportionate share approach for offsets of prior settlements in single-suit, multi-defendant cases.
Over time Alaska has moved from a tort regime premised on joint and several liability, where a marginally liable defendant could end up paying for the entire harm, towards a system focused on linking a defendant's liability to that defendant's comparative share of the harm. As we have noted:
[Alt common law, and in Alaska before 1970, joint tortfeasors were jointly and severally liable and did not have a right of contribution against each other. The legislature granted joint tortfeasors the right of contribution in 1970 by enacting the Alaska Uniform Contribution Among Tort-feasors Act. That act explicitly precluded intentional tortfeagors from seeking contribution. Tort reform legislation in 1986 amended the contribution act, and required that the liability of joint tortfeasors be determined by each tortfeasor's percentage of fault."[11]
The 1986 legislation was in turn amended in 1988 when the voters passed the "Tort Reform Ballot Initiative" (initiative), which moved Alaska from modified joint and several liability to pure several Hability."[12] The initiative amended AS 09.17.080(d) such that "each party [would be] liable only for damages equal to his or her share of fault" and repealed statutory sections concerning contribution between torfeasors.[13] The initiative was designed to "ensur[e] that people are held accountable for injuries or damages they cause," and thus continued the general trend towards increasing emphasis on comparative fault.[14]
Granting Robles a full offset that would eliminate his liability would require us to ignore the development of our law and the central purpose of the initiative. The voters did not intend for tortfeasors like Robles, who have been found liable for a portion of a plaintiff's harm, to escape paying for their share of the harm because of another defendant's settlement with the plaintiff. As the statement in support of the initiative noted, Ballot Measure 2 is passed and you do something wrong, you pay for it." [15] Because allowing Robles a full offset would run counter to the intent behind the initiative, we reject his argument.
Robles cites Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin[16] and Navistar International Transp. Corp. v. Pleasant[17] for the proposition that "a [defendant] is entitled to offset the amount of any settlement against the jury verdict in order to avoid double recovery, and consideration received [in a settlement agreement] operates as payment 'pro tanto' upon any judgment obtained against [other tortfeasors]." He argues that these cases were decided on the basis of our opposition to "double recovery." However, these cases are distinguishable: Bohna and Navistar were decided under joint and several liability regimes that included statutory provisions requiring full offset.[18] Moreover, the rule against double recovery is *1024 grounded in joint and several lability. In that context, the plaintiff has "overlapping remedies," which is to say that he or she can be compensated by any liable defendant, and the rule is necessary to ensure that such "overlapping remedies ... must not become multiple remedies." [19] But since the pure several liability regime enacted by initiative in 1988 repealed the express availability of full offsets and because a defendant's liability under the 1988 law was limited by comparative fault, there is no reason to allow a non-settling defendant full offset under the 1988 law. As the Texas Supreme Court noted:
[Under several lability] [tlhe reasoning behind the one recovery rule no longer applies.... Because each defendant's share can now be determined, it logically follows that each may settle just that portion of the plaintiff's suit. The settlement does not affect the amount of harm caused by the remaining defendants and likewise should not affect their Hability.[20]
The cases Robles relies upon are grounded in joint and several liability, and we see no reason (mor has Robles offered any) to apply a rule permitting full offset in the several liability context.[21] Instead, we join the United States Supreme Court,[22] the majority of other jurisdictions [23] and the Re *1025 statement (Third) of Torts [24] in adopting the proportionate share rule. Under this approach non-settling defendants are entitled to offset the plaintiff's damages in proportion to settling parties' comparative fault. Thus, Robles is entitled to an offset for only Petro-lane's 48.75% share of the harm, and therefore remains liable for 56.25% of Gannaway's damages. Petrolane may deduct ninety percent of this amount from the monies it owes to Robles according to its assignment agreement with Gannaway.
While this approach recognizes the possibility that a plaintiff will secure total recoveries in excess of her damages as later determined by a jury (in a trial without all defendants present), there is no injustice in this result because the plaintiff bears the reciprocal risk of settling with a defendant for less than that defendant's comparative share of the harm as later determined by a jury, and may therefore end up collecting less than her damages as determined by the jury. To conclude otherwise would lead to significant unfairness because it would grant a non-settling defendant the benefit of a bargain for which he bore no risk. As the Restatement (Third) of Torts explains:
[A] plaintiff may recover more than the damages determined by the fact finder. That occurs when the plaintiff settles with one defendant for an amount greater than the settling tortfeasor's comparative share of the plaintiff's damages. This result is appropriate; since the plaintiff bears the risk of an inadequate settlement (in which case the plaintiff will recover less than the damages determined by the fact finder), the plaintiff should also obtain the benefit of a favorable settlement. Limiting the plaintiff's recovery to the damages determined by the fact finder would provide an unjustified windfall to the nonsettling defendant.[25]
Indeed, allowing full offsets under several liability would discourage settlement because a rational defendant would delay resolving the case in the hopes that another defendant's settlement would reduce or eliminate his liability.[26] Our strong policy favoring settlement as a positive method of case resolution [27] is a further reason to favor proportionate (pro rata ) offset.
This conclusion is also supported by the overall uncertainty associated with settlement values. While the full offset rule assumes a direct relationship between settlement value and a plaintiff's actual damages, in practice settlement amounts reflect complicated and opaque considerations such as settling parties' respective risk propensities, *1026 the value of peace from further litigation, and a settling party's immediate financial situation. The value of a settlement is not perfectly related to a plaintiff's actual damages-indeed, the relationship may be only a rough approximation-and thus there is no inconsistency or unfairness in allowing a plaintiff to recover more or less through partial settlement than the plaintiff could receive at trial.[28]
Moreover, we are unconvinced that Universal Motors, Inc. v. Neary[29] requires a full offset in this case. The superior court read Neary as entitling Robles to "offset [the] amounts Gannaway received from other defendants." Universal Motors, the appellant in Neary, argued that inconsistent adjudications would occur and plaintiffs might receive double recovery if we did not adopt the rule that a plaintiff may only bring one action in tort to obtain relief from all possible tortfeasors.[30] Specifically, Universal Motors offered a hypothetical situation in which a Plaintiff, P, sued one defendant, D1, in one action and the jury allocated fault evenly between them.[31] If P then sued a second defendant, D2, Universal Motors contended that the jury could allocate fifty percent of fault to D2.[32] Consequently, Universal Motors maintained that P could receive full compensation for his injuries even though two juries had found him fifty percent at fault.[33] The superior court in this case based its interpretation of Neary on our response to this hypothetical. We rejected Universal Motors's claim that the appellant could obtain double recovery because we held that D2 was entitled to offset his liability against D1's liability.[34] We thus observed that P could obtain no more than the jury awarded in the first trial.[35] But Neary does not control this case, for it concerned the one-action rule, which requires a plaintiff to join all defendants in one action. We discussed the possibility of an offset in response to the defendant's argument that, without a one-action rule, a plaintiff could separately sue multiple defendants, allowing plaintiff to collect more than full damages from defendants in separate cases; we allowed a full offset to prevent such an outcome. That analysis is not applicable where, as here, the case involves multiple defendants in the same suit. Both Robles and Petrolane were included in the same action and the jury made findings regarding the comparative fault of all parties. Consequently, Neary neither controls this case nor supports application of a full offset.
Indeed, our Neary discussion was not inconsistent with the proportionate share approach. In Neary we observed that D1 would pay for more than its comparative share of the harm and D2 would pay for less than its share.[36] To address this problem we noted that D1 might be able to secure common law contribution, and we cited to the Restatement section which recommends allowing contribution where all necessary defendants were not joined in the initial action.[37] Although we did not pass judgment about whether such a remedy was then available in Alaska, we later recognized that it was available because it furthered the goal of apportioning tort losses in accordance with each responsible person's percentage of *1027 fault.[38] This common law remedy thus comports with the proportionate share approach. By suing defendants in two separate actions, the hypothetical plaintiff would undermine the relationship between a party's share of the harm and its actual payments, and contribution would allow a defendant who overpaid to ensure that he does not end up paying for more than his share of the harm. Where, however, the comparative fault of all parties has been jointly determined, there is no danger of parties over- or under-paying, and thus neither offsets nor a contribution remedy would be appropriate.
We reject the dissent's reliance on AS 09.17.080(c)-a statute not cited or relied upon by the appellee in this case-and the dissent's interpretation of that statute. As of October 6, 1993, when the accident occurred, AS 09.17.080(c) provided:
The court shall determine the award of damages to each claimant in accordance with the findings, subject to a reduction under AS 09.16.040, and enter judgment against each party liable. The court shall also determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.
But in 1988 the voters by initiative had repealed AS 09.16, including AS 09.16.040. This case requires us to determine what effect, if any, we should give to the repealed statute.
In Benner v. Wichman,[39] we held that we were not prohibited from examining the repealed statute in interpreting a related statute where nothing in the related statute "suggests an intent to alter the provision's applicability." [40] In the present case, however, the related statute-AS 09.17.080-con-tains subsection (d) which, as shown above, directly conflicts with the notion of fully offsetting a non-settling defendant's liability by a previous settlement by a co-defendant.
We are therefore not persuaded that former AS 09.17.080(c)s reference to AS 09.16.040 provides support for the dissent's position. The dissent appears to construe the "subject to" language of § .080(c) as an invariable command to reduce under AS 09.16.040, regardless of that section's repeal. In effect, this interpretation would require us to read § .080(c) as thought it said that the court must determine the award of damages, "subject [itl to a reduction under AS 09.16.040," and enter judgment. But as actually adopted, the "subject to" phrase omits the "it." As we understand the phrase, "subject to a reduction" under AS 09.16.040 simply means that a judgment entered under § .080(c) will remain "subject to reduction" under AS 09.16.040 provided that the statute applies-in other words, the phrase just reserves the right to apply § .040 to the extent that it applies by its own terms.[41] Under this view of the phrase, § .080(c) would not require a reduction under AS 09.16.040 in this case: the reduction statute does not apply by its own terms here, because the settlement in this case was reached after the statute was repealed.
It might seem tempting to reject this interpretation because it appears to lead to a strange result: why would the electorate have wanted to reserve the right to apply a law it had just repealed? One explanation might be simple drafting error on the part of the initiative's sponsors. But another may lie in the timing of the repeal of § .040 and the adoption of § .080(c).
Although § .080(c) was adopted at the same time as § .040 was repealed, the effective date of § .040's repeal does not necessarily establish the date when the repealed law *1028 would cease to affect cases to which the new § .080(c) applied. Since releases and covenants are contractual, the meaning and seope of a given settlement agreement would be determined by the law in effect when it was reached; conversely, later changes in the law governing settlements would not alter the existing settlement's terms. Thus, despite its repeal, AS 09.16.040's requirements would continue to control any settlements reached before that statute's repeal in actions filed after the repeal.
On the other hand, § .080(c)'s new lability provisions would apply prospectively to new claims accruing after enactment. Under the discovery rule, claims for the same injury can accrue at different times against different tortfeasors. Thus, it seems predictable that in some cases accruing against particular tortfeasors after § .080(c)'s enactment, there would already be pre-enactment settlements for the same injury involving other tortfea-sors against whom claims had accrued at an earlier point. Because § .040's reduction requirement would continue to apply to these settlements, the drafters of § .080(c) could reasonably have decided to include language in § .080(c) to cover these situations by specifying that a judgment under § .080(c) would remain "subject to a reduction under AS 09.16.040" if that statute applied to the case.
This rationale might also provide a plausible explanation for the otherwise unexplained repeal of § .080(c)'s "subject to" provision in 1997. The number of potential new claims for injuries involving pre-1989 settlements would inevitably dwindle and approach a vanishing point over time. Thus, by 1997 it simply might have become clear that § .080(c)'s reference to former § .040 was just a vestige and served no further purpose.
Alternatively, as noted above, § .080(c)'s reference to the repealed § .040 may have been a drafting mistake by the sponsors of the 1988 initiative. And the legislative repeal in 1997 of § .080(c)'s "subject to" provision may have simply reflected the legislature's desire to rectify this mistake. In either event, we conclude that AS 09.17.080(c)'s reference to AS 09.16.040 does not compel the result reached by the dissent. We likewise reject the dissent's claim that AS 09.17.080(c)'s reference to the repealed AS 09.16.040 was "critical language" that dictates the result favored by the dissent.
In sum, we do not think the voters intended to allow non-settling defendants to escape paying for harms that they caused. While we had previously indicated that full offsets were appropriate in the context of multiple actions and joint liability, rote application of the rule in the pure several liability context would discourage settlements and lead to substantial unfairness. Proportionate share offsets are logical incidents of several lability, and in recognizing them we simply adopt the most efficient and well-accepted solution.
2. Petrolane did not waive any legal arguments by failing to make an offer of proof or otherwise present the second trial court with evidence of Gannaway's claims.
Robles argues, even assuming that Petro-lane's legal arguments are meritorious, that Petrolane has waived them because (1) "Pe-trolane and Shoreside presented no evidence concerning [Robles's] liability for Gannaway's injuries," specifically by failing to file a motion in limine, present an offer of proof, or adduce evidence at the remand trial concerning Gannaway's claims; (2) this in turn precluded Robles "from presenting evidence that would negate his potential liability;" and (8) there was "no judgment after the remand that addresses liability on the part of Robles for Gannaway's injuries."
In support of his argument, Robles quotes from our decision in Agostinho v. Fairbanks Clinic Partnership[42] where we stated that "a party waives its right to challenge the exclusion of evidence unless an offer of proof as to the substance of the evidence is made at the time the evidence is excluded." [43] He argues that because no offer of proof was made, appellate review is precluded because "there is no showing that it was prejudicial to refuse to admit the excluded evidence."
*1029 The passage cited by Robles clearly indicates that an offer of proof is needed to challenge the exclusion of evidence. It is not, however, needed to prevent waiver of a legal argument. Having received an assignment from Gannaway for his claims against Robles, Petrolane asked the superior court to credit the assignment against its liability to Robles. The superior court declined to grant Petrolane a credit because it read Neary as requiring a full offset; it reasoned that as Petrolane had already paid Gannaway more than the first jury's determination of his damages, neither Gannaway nor Petrolane as his assignee could collect from Robles. The court did not exelude evidence-it rejected a legal argument. Furthermore, the "evidence" that was related to this legal issue-Gannaway's settlement with and assignment of claims to Petrolane-was uncontroverted and part of the record. Accordingly, Robles's argument regarding offers of proof is irrelevant to the disposition of this case.
Robles next argues that Petrolane's claim of a credit for Gannaway's assignment required relitigating Robles's (and other parties) liability for Gannaway's injuries. He notes that he was "prepared to go forward" on the issue of his liability to Gannaway and that he was prejudiced by his inability to present relevant evidence. Robles is incorrect. As he himself notes, the first jury found that he was fifty percent liable for Gannaway's injuries, and that Gannaway had not been negligent at all. While we remanded to allow a second jury to consider Shore-side's potential liability and its potential ef-feet on the comparative fault of the parties, we did not disturb the findings concerning Gannaway's non-negligence or the amount of his damages and, as explained in Part IV.B., the remand order did not require reconsideration of the fact that Robles and Petrolane were both partially liable.[44] Robles is thus precluded from relitigating his liability to Gannaway.[45] His waiver argument is therefore meritless.
B. The Superior Court Correctly Instructed the Jury on Petrolane and Robles's Negligence and Liability.
We concluded our opinion in Robles v. Shoreside Petroleum, Inc. by remanding "the issue of Shoreside's negligent failure to warn and on related issues of causation and comparative fault."[46] Before the second trial, Petrolane moved in limine to "prohibit instructions, argument, and evidence related to the jury findings in the first trial" The superior court refused to grant Petrolane's request. The court instructed the jury before trial that it had already determined that (1) Petrolane negligently trained Gary Robles and that its negligence was a legal cause of his harm;. (2) Gary Robles was negligent and that his negligence was a legal. cause of his own harm; (@) Shoreside negligently trained Gary Robles; and (4) Petrolane and Gary Robles were at least one percent at fault. The instructions directed the jury not to reexamine these issues or discuss why the court already decided them.
Petrolane maintains that the court's jury instructions and comments "created two categories of defendants from the outset-one defendant (Petrolane) obviously at fault ... and one (Shoreside) where the judge could not decide whether any fault existed." According to Petrolane, "[this obvious dichotomy prejudiced Petrolane," by "ma[king] it less likely that the jury would find Shoreside at fault," by "dramatically alter{ing] the nature of the proof presented by the parties," and by rendering the jury "unable to truly apportion fault in the manner intended by statute and by this Court." Petrolane argues that this case should be remanded and the trial court instructed to empanel a new jury to reconsider comparative fault.
Allegedly erroneous jury instructions are grounds for reversal only if "they were objected to and caused prejudice." [47] The party appealing a trial court's decision to give or refuse to give certain jury instruc *1030 tions has the burden of showing that the instructions caused prejudicial error.[48] An error is prejudicial if "we determine the verdict would have been different had the erroneous instruction not been given.[49] We determine whether an error is prejudicial by placing ourselves in the jurors' position and considering whether the erroneous instructions "probably affected their judgment." [50]
Petrolane does not claim that the court prevented it from presenting evidence demonstrating Robles's and Shoreside's comparatively high portion of fault and its own lack of fault. Rather, Petrolane complains that "the jury never had an opportunity to assess the comparative fault of the parties," because the trial court "periodically informed and instructed the jury that the fault of Petrolane and Robles were established facts, and that it need only determine whether Shoreside was at fault." Petrolane insists that "[in determining comparative fault, a jury must be presented with all relevant liability evidence, and must draw its own conclusions as to negligence and causation on the part of each of the parties." Therefore, Petrolane continues, "there was no reason to inform the second jury of the bare conclusions of the first jury." We disagree..
The negligence and fault of Pe-trolane and Robles were established by the first jury.[51] This court affirmed the first jury's findings of Petrolane's negligence, Robles's negligence, and their combined legal causation of the accident. We remanded only for determination of Shoreside's possible negligence and the comparative fault of all parties in light of this new determination.[52] Thus, under the doctrine of law of the case, the trial court properly granted preclusive effect to these findings. This doctrine "prohibits the reconsideration of issues which have been adjudicated in a previous appeal in the same case. Even issues not explicitly discussed in the first appellate opinion, but directly involved with or 'necessarily inhering' in the decision will be considered the law of the case." [53] Thus, previously adjudicated issues may be reconsidered only in the face of "exceptional cireumstances presenting a clear error constituting a manifest injustice." [54] The reasons for this doctrine include "(1) avoidance of indefinite litigations; (2) consistency of results in same litigation; (8) essential fairness between the parties; and (4) judicial efficiency" [55]-in short, all of the concerns raised by Petrolane's argument. Had its deliberations not been limited by the issues properly decided in the original verdict, the second jury might easily have returned a verdict contradictory to the portions of the first verdict that this court already upheld, bogging down courts and litigants in a confusing and contradictory set of verdicts..
Petrolane concedes that law of the case is applicable here, but argues that the doctrine has no effect. Petrolane interprets the language of our earlier remand to require determination of not only the issues of Shoreside's negligence and causation between its negligence and the harm and the comparative fault of the parties, but also retrial on the negligence of all of the parties. We reject this interpretation. The error in the first trial stemmed from the court's refusal to allow presentation of a particular theory of *1031 negligent conduct by Shoreside.[56] Our remand required that the superior court allow the jury to determine the comparative fault of the parties in light of this additional theory of negligence.[57] We did not require the issue of Petrolane's and Robles's negligence to be relitigated because the determination of their negligence was not hindered by the failure to consider all the other theories of Shoreside's negligence.[58]
We also reject Petrolane's argument that the jury instructions influenced the jury by creating "two categories" of defendants for two reasons. First, the record indicates that the superior court sufficiently instructed the jury not to draw any inferences from the fact that the negligence of Robles and Petrolane had already been determined. The superior court's jury instructions stated clearly that, aside from the facts listed above, it had "not intended to give the jury any direction or instruction on how it should determine any party's actual percentage of fault in this case." The superior court acted in accordance with our remand, telling jurors that "what you're going to be hearing during the course of this trial is the parties presenting evidence as to who did what to enable you as jurors to decide what percentage of fault should be apportioned to what party." The court explained that "[iln determining the percentages of fault, the jury should consider the nature of the conduct of each person at fault." The judge went on to note that "although the court has already determined ... that Petrolane was negligent, I haven't determined the extent or the degree of the negligence and the jury may decide it was one percent or fifteen or fifty or seventy-five or ninety-nine percent." Finally, the court cautioned the jury: "don't read anything in that somehow the judge must be suggesting what the answer is."
Second, Petrolane only offers one case in support of its argument: Kava v. American Honda Motor Co., Inc.[59] In Kave a jury found for the plaintiff on a products lability claim, and determined total damages and apportioned liability between the plaintiff and defendant, but deadlocked on the plaintiffs negligence claim.[60] We remanded the negligence claim and required the second jury to reassess comparative fault because the original jury verdict form did not distinguish between the products liability and negligence claims.[61] Petrolane asserts that Kava "established that instructions referring to the partial conclusions drawn by another jury should have been rejected." However, in Kava we required comparative fault be retried because we found "good reason" to believe that jurors would have been likely to award greater comparative fault to the defendants if Hability had been determined under negligence as opposed to under strict Hability.[62] Nowhere does Kova state that in order to apportion fault on a remanded claim, the jury must retry the lability of other parties as well. A new determination that Shoreside was liable would have altered the percentage of fault borne by each party, but it would not have altered the simple fact of Petrolane and Robles's liability for their already-established negligence. Thus, we do not read Kava's conclusion that "a new trial *1032 will be necessary on the issue of comparative fault," [63] as indicating that the basic lability of all parties, as opposed to simply Shoreside, had to be relitigated.[64]
In light of these considerations, we hold that Petrolane has not met its burden of showing that it was prejudiced by the information and instructions the superior court furnished to the jury.
v. CONCLUSION
Because we hold that a proportionate share offset is appropriate under several liability, we REVERSE and REMAND the issue of Robles's offset for Petrolane's prior settlement with Gannaway for further proceedings in accordance with this opinion. Because we hold that the superior court properly instructed the jury about Petrolane and Shoreside's negligence, we AFFIRM on this issue.
EASTAUGH, Justice, with whom MATTHEWS, Justice, joins, dissenting in part.

. 29 P.3d 838, 840-41 (Alaska 2001).

. But as required by the settlement agreement, Petrolane was ordered to pay ten percent of Gannaway's judgment against Robles directly.

. Robles, 29 P.3d at 844.

. Id. at 844 n. 21.

. Id. at 846 n. 30.

. 984 P.2d 515 (Alaska 1999).

. Rausch v. Devine, 80 P.3d 733, 737 (Alaska 2003).

. Sisters of Providence in Washington v. A.A. Pain Clinic, Inc., 81 P.3d 989, 997 n. 4 (Alaska 2003).

. Robles argues that AS 09.17.080 was amended in 1997 and that the revised statute only applies to causes of action accruing on or after August 7, 1997, well after accrual of the cause of action in this case. Thus, he argues this provision is inapplicable. While much of AS 09.17.080 was revised in 1997, the language of subsection .080(d) was enacted by initiative in 1988, came into force on March 5, 1989, and was not affected by the 1997 amendment. Consequently, subsection .080(d) was the law in 1993, when the events underlying this case occurred. See Herscher v. State, Dep't of Commerce, 568 P.2d 996, 1001 (Alaska 1977) (quoting 1A Surarrtanp Statutes AND Staturory Construction § 22.23, at 191 (4th ed.1972)):
Provisions of the original act or section which are repeated in the body of the amendment, either in the same or equivalent words, are considered a continuation of the original law.... The provisions of the original act or section re-enacted by the amendment are held to have been the law since they were first enacted, and the provisions introduced by the amendment are considered to have been enacted at the same time the amendment took effect.

. Because the second jury found that Petrolane was 43.75% responsible for the accident, Petro-lane owed Robles 43.75% of Robles's already-determined damages of $871,216.19, or $381,157.08, plus prejudgment interest, costs, and fees, if no offset applied.

11. Kodiak Island Borough v. Roe, 63 P.3d 1009, 1013 (Alaska 2003) (internal citations omitted).

. Id.; Alaska Gen. Alarm Inc. v. Grinnell, 1 P.3d 98, 100 (Alaska 2000). The changes effected by the 1988 initiative went into effect in 1989.

. See 1988 Election Pamphlet for Initiative 87TOR2 (statement in support).

. Id.

. Id.

. 828 P.2d 745 (Alaska 1992).

. 887 P.2d 951 (Alaska 1994).

. Bohna, 828 P.2d at 758 (citing AS 09.16.040); Navistar, 887 P.2d at 958 n. 9 (citing former AS 09.17.090 and noting this statute was identical to AS 09.16.040(1)). The former AS 09.17.090 stated in relevant part:
(1) it does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater. Robles also cites to Luth v. Rogers & Babler
Const. Co., 507 P.2d 761, 766 (Alaska 1973) (internal citations omitted) where our analysis depended upon the now-abrogated common law:
A cardinal common principle that in the absence of punitive damages a *1024 plaintiff can recover no more than the loss actually suffered. The doctrine prohibiting double recovery supports the rule that a payment received by the plaintiff for a covenant not to sue someone potentially liable in tort must be deducted from the damages recoverable from persons whose tort liabilities arise out of the same circumstances. This rule is applicable regardless of whether the covenantee, under a covenant not to sue, is a party to the suit.

. Krieser v. Hobbs, 166 F.3d 736, 740 (5th Cir.1999). See also Waite v. Morisette, 68 Wash.App. 521, 843 P.2d 1121, 1123 (1993) (pro tanto rule "logical so long as joint and several liability remained in effect, because a nonsettling defendant could be liable for 100 percent of the damages regardless of the degree to which that party was at fault. Thus with joint liability, fairness dictated that credit be given for amounts paid to the claimant by settling defendants."). -

20. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 431 (Tex.1984). See also Krieser, 166 F.3d at 743 ("[WJhere liability is not joint-and-several, and each defendant instead bears liability for damages only proportionate to his own fault, there is no assessment of liability for damages common to the settling and non-settling defendants. Accordingly, the settlement has an entirely separate basis from the apportioned damages, and the one-recovery rule does not apply.").

. Robles also cites to Norcon, Inc. v. Kotowski, 971 P.2d 158 (Alaska 1999), where we offset the plaintiff's compensatory damages award against Norcon by the value of a prior settlement with another defendant. Id. at 171. Norcon was governed by the 1988 initiative, but in applying an offset, we cited only to Navistar Int'l Transp. Co. v. Pleasant, 887 P.2d 951, 957-58 (Alaska 1994), which was governed by the pre-1989 joint and several liability regime. Because full offsets are limited to joint and several liability systems, and because in Norcon we did not examine or discuss which type of offset is appropriate under several liability, we decline to apply Norcon to the present case. Moreover, Norcon is distinguishable in that it required full offset in order to avoid double recovery by the plaintiff, whereas in the present case full offset will only allow a wrongdoing defendant to escape accountability.
In Chenega Corp. v. Exxon Corp., 991 P.2d 769 (Alaska 1999), we approved a full offset of a $6,000,000 judgment against a $23,000,000 payment plaintiffs received from the federal Trans-Alaska Pipeline Liability Fund. Id. at 790-92. Chenega is at best inapposite and at worst actually undercuts Robles's argument for two reasons. First, in Chenega we did not consider apportionment of damages under AS 09.17.080(d) and expressly declined to consider the propriety of a full offset of the judgment against Exxon by the settlement payment tendered by Exxon's co-defendant, the Alyeska Pipeline Service Company. Id. at 790-92 and n. 96. Second, our primary concern in Chenega was double payment, not double recovery; an offset was justified because Exxon would have had to pay the Fund for its payments to the same plaintiffs for the same damages: "This ... is not a situation in which denying a set off is necessary to prevent the wrongdoer from escaping accountability." Id. at 792. In this case, however, Robles is not exposed to double payment. Indeed, allowing a full offset would allow Robles to "escap[e] accountability" completely. Id.

. McDermott v. AmClyde, 511 U.S. 202, 208-217, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994) (discussing various approaches and adopting proportionate share rule).

. See Krieser, 166 F.3d at 743 (noting that courts in sixteen states have deemed full offsets to be incompatible with several liability regimes); Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc., 659 So.2d 249, 252 (Fla.1995) (describing proportionate share rule as "clearly the majority rule" and adopting same); Thomas v. Solberg, 442 N.W.2d 73, 77 (Iowa 1989) (applying pro *1025 portionate offset rule and listing cases reaching same conclusion}.

. Restatement (Teirp) or Torts: Apportionment or Lasmuy § 16 (1999) (recommending proportionate share approach under joint and several liability). See also id. at § B19 (recommending proportionate share approach under several liability).

25. Id. at § 16 cmt. e (1999). Although § 16 generally discusses joint and several liability, the Restatement adopts the same rule regarding the liability of nonsettling defendants in both the joint and several liability and pure several liability contexts. See id. at § 16, cmt. h. ("[The liability of a nonsettling defendant remains the same whether a credit is provided pursuant to this Section in the case of a joint and severally liable defendant or ... in the case of a severally liable defendant."). See also id. at § B19 emt. k ("As when joint liability and several lability is the governing rule, the plaintiff may recover more than the total damages determined by the factfinder as a result of making a beneficial settlement with some tortfeasors.").

. See id. at § 16 Reporter's Note cmt. e. ("Providing such a windfall to the nonsettling defendant also has the detrimental effect of discouraging settlements, both by the plaintiff who will not obtain the benefit of a favorable settlement with the first settling tortfeasor and by defendants who were not initial settling tortfeasors, because they can obtain the benefits of a less favorable settlement by the plaintiff with earlier settling tortfeasors only if they refuse to settle and continue to trial."). See also Roland v. Bernstein, 171 Ariz. 96, 828 P.2d 1237, 1239 (App.1991) (noting full offsets discourage settlements); Kussman v. City & County of Denver, 706 P.2d 776, 782 (Colo.1985) (same).

. Anchorage Sch. Dist. v. Anchorage Daily News, 779 P.2d 1191, 1193 (Alaska 1989) ("'We recognize the important public policy served by those measures which encourage settlement."); Interior Credit Bureau, Inc. v. Bussing, 559 P.2d 104, 106 (Alaska 1977) (Stipulations and settlements are favored in law because they simplify, shorten and settle litigation without taking up valuable court resources.").

. See Duncan v. Cessna Aircraft Co., 665 SW.2d 414, 431 (Tex.1984) (citations omitted) ("[Slettlement dollars are not the same as damages. Settlement dollars represent a contractual estimate of the value of the settling tortfeasor's liability and may be more or less than the proportionate share of the plaintiff's damages. The settlement includes not only damages, but also the value of avoiding the risk, expense, and adverse public exposure that accompany going to trial. There is no conceptual inconsistency in allowing a plaintiff to recover more from a settlement or partial settlement than he could receive as damages.").

. 984 P.2d 515 (Alaska 1999).

. Id. at 516.

. Id. at 518.

. Id.

. Id.

. Id.

. Id.

. Id. at 518 n. 14.

. Id. (quoting Resrarement (Tmirp) or Torts: Ar-rortionment or Liasmity. § 33 cmt. f (Proposed Final Draft Mar. 22, 1999)).

. McLaughlin v. Lougee, 137 P.3d 267, 279 (Alaska 2006).

. 874 P.2d 949, 957 n. 18 (Alaska 1994).

. Id. Contrary to the dissent's assertion, nothing in Benner "required" this court to interpret the reference in AS 09.17.080(a) to AS 09.16.040.

. Brian Garner seems to support this reading; he views the phrase "subject to" as essentially redundant when used in a statute to refer to other provisions of law:
subject to the provisions of this Act. This re-punpancy appears frequently in common-law stature-DrRartiNc. A variation is subject to any contrary provision of this Act. As often as not, it signals poorly organized drafting; certainly it ~ makes the interpreter's job no easier.
Bryan A. Garner, A Dictionary or Monern Lrecar Usage at 840 (Oxford University Press 1995).

. 821 P.2d 714 (Alaska 1991).

. Id. at 717.

. Robles v. Shoreside Petroleum, Inc., 29 P.3d 838, 844 n. 21, 846 (Alaska 2001).

. See the discussion supra at pp. 1024-25.

. Robles, 29 P.3d at 846.

. K & K Recycling, Inc. v. Alaska Gold Co., 80 P.3d 702, 718 (Alaska 2003) (citations omitted).

. City of Kodiak v. Samaniego, 83 P.3d 1077, 1082 (Alaska 2004) (citation omitted).

. Jackson v. American Equity Ins. Co., 90 P.3d 136, 141 (Alaska 2004) (citing Reich v. Cominco Alaska, Inc., 56 P.3d 18, 25 (Alaska 2002)).

. General Motors Corp. v. Farnsworth, 965 P.2d 1209, 1214 (Alaska 1998) (citing Vincent By Staton v. Fairbanks Mem'l Hosp., 862 P.2d 847, 851 (Alaska 1993)).

. Robles v. Shoreside Petroleum, Inc., 29 P.3d 838, 841 (Alaska 2001).

. Id. at 846.

. Wolff v. Arctic Bowl, Inc., 560 P.2d 758, 763 (Alaska 1977) (internal citations omitted).

. State, Commercial Fisheries Entry Comm'n v. Carlson, 65 P.3d 851, 859 (Alaska 2003) (internal quotations and citations omitted).

. Conner v. Stelly, 830 So.2d 1102, 1110 (La.App.2002). See also Watts v. Seward School Bd., 421 P.2d 586 (Alaska 1966) (Rabinowitz, J., dissenting in part and concurring in part), vacated on other grounds, 391 U.S. 592, 88 S.Ct. 1753, 20 L.Ed.2d 842 (1968) (explaining that law of case promotes judicial efficiency by narrowing issues in successive stages of litigation).

. Robles, 29 P.3d at 842-44.

. Id. at 846.

. Petrolane also cites AS 09.17.080(b), which provides that "[in determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the extent of the casual relation between the conduct and the damages claimed." Petrolane argues that the statutory language supports its argument that the second jury was required to make new determinations regarding the parties' negligence and related causation. However, this statute only requires that such determinations be made by a fact-finder. Where, as here, a prior fact-finder made determinations of negligence that are unaffected on remand, these determinations should not be revisited. Cf. State v. Kaatz, 572 P.2d 775, 785 n. 11 (Alaska 1977) ("If a new trial on the issue of apportionment is granted, the court should instruct the jurors that (1) they must assign some percentage of the negligence to each party, (2) the total damages are in the sum found by the previous trier of {act (unless the same jury is also retrying the damages issue), and (3) their sole function is to apportion the negligence between the parties.").

. 48 P.3d 1170 (Alaska 2002).

. Id. at 1173.

. Id. at 1175-76.

. Id. at 1176.

. Id.

. Petrolane's argument also contradicts the Neary hypothetical discussed above. See supra Part IV.A.1, pp. 14-15. In Neary we noted that in a second trial by the same plaintiff against a different defendant, "there should be a determination of the comparative fault" of all parties, but that the second defendant would be "entitled to a ruling based on collateral estoppel that P and D1 are negligent," although "the percentage of their total fault ... cannot be specified, for that issue has not been litigated." Universal Motors, Inc. v. Neary, 984 P.2d 515, 518 (Alaska 1999).