Robert & Donald DIGGINS, d/b/a/
Diggins Concrete, Appellants,

v.

Lance JACKSON, Appellee.

No. S–11141.

Supreme Court of Alaska.

Aug. 10, 2007.

Rod R. Sisson and Craig Wm. Black, Sisson & Knutson, P.C., Anchorage, for Appellants.

Marion C. Kelly, Wade, Kelly & Sullivan, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

PER CURIAM.

On August 22, 1999, Lance Jackson was riding his bicycle on a bike path in Anchorage. Because of ongoing repairs, a section of the bike path's pavement had been removed. Jackson rode into the gap, flipped his bike, and fractured his neck.

Jackson sued three contractors involved in the repair work: Moseley Enterprises, Inc., Warning Lites of Alaska, Inc., and Diggins Concrete. He settled with Moseley and Warning Lites before trial, receiving a total of $106,190.60 ($91,190.60 from Moseley and $15,000 from Warning Lites). Jackson proceeded to trial against Diggins. The jury's verdict found that Jackson's damages totaled $94,943.40, that Diggins, Moseley, and Jackson had acted negligently in causing those damages, but that Warning Lites was not responsible for the accident. The verdict allocated ten percent of the liability to Diggins, twenty percent to Moseley, seventy percent to Jackson, and none to Warning Lites.[1]

This nominally left Diggins liable to Jackson for $9,494.34—ten percent of Jackson's total damages. But Diggins asked the trial court, Superior Court Judge Philip R. Volland, to offset Jackson's damages by the amounts already paid to him in settlement by Moseley and Warning Lites; since the pretrial settlement payments exceeded Jackson's total damages as awarded by the jury, the

---

1. Under this verdict, because Jackson was responsible for seventy percent of his own damages, the amount he could recover from the two other responsible parties, Diggins and Moseley, totaled $28,483.00—thirty percent of $94,943.40.

offset would have left no further damages for Diggins to pay. The court denied Diggins's request and entered a judgment requiring Diggins to pay Jackson $9,494.34 plus interest, fees, and costs.

Diggins filed this appeal, challenging the superior court's order declining to offset the prior settlement payments. After hearing oral argument, we stayed Diggins's appeal pending our ruling in an already submitted appeal involving analogous facts and a similar issue, *Petrolane Inc. v. Robles.*[2] Our opinion in *Petrolane* has now decided the point.

In *Petrolane* we asked, "Is a non-settling defendant tortfeasor entitled to offset against his liability to the plaintiff the amount of a settlement between the plaintiff and a settling defendant?"[3] After considering our prior case law and reviewing the history of Alaska's several-liability regime adopted almost two decades ago, we observed that, "since the pure several liability regime enacted by initiative in 1988 repealed the express availability of full offsets and because a defendant's liability under the 1988 law was limited by comparative fault, there is no reason to allow a non-settling defendant full offset under the 1988 law."[4] We thus "join[ed] the United States Supreme Court, the majority of other jurisdictions and the Restatement (Third) of Torts in adopting the proportionate share rule,"[5] summarizing that rule as follows: "Under this approach non-settling defendants are entitled to offset the plaintiff's damages in proportion to settling parties' comparative fault."[6] We found no inconsistency between this approach and our prior case law.[7] And we rejected a separate argument that a full offset was required before 1997 because, until AS 09.17.080(c) was

repealed by the legislature that year, it included language directing courts to enter judgment "subject to a reduction under AS 09.16.040"—a provision otherwise repealed by the 1988 initiative.[8]

The only salient difference between the situation in the case now before us and the circumstances at issue in *Petrolane* is that AS 09.17.080(c)'s "subject to reduction" language was still in effect in 1993, when the accident in *Petrolane* occurred, whereas the language had been repealed by the time Jackson's injury occurred in 1999. But as we implicitly recognized in *Petrolane,* the proportionate-share rule we adopted there does not hinge on subsection .080(c)'s repeal; indeed, as a practical matter, the fact that the provision was repealed before Jackson's accident can only favor the conclusion that *Petrolane* must also apply here.[9]

Diggins cites no authority and raises no arguments that we did not consider in *Petrolane;* accordingly, we adhere to the approach we adopted there and reiterate the basis for our ruling: "Proportionate share offsets are logical incidents of several liability, and in recognizing them we simply adopt the most efficient and well-accepted solution."[10]

Because *Petrolane* applies here and precludes Diggins's request for a full offset, we AFFIRM the superior court's judgment.

MATTHEWS, Justice, with whom EASTAUGH, Justice, joins, concurring.

In this case the plaintiff settled claims with two defendants for $106,000.[1] The subsequent verdict against the remaining defendant determined that plaintiff's total recoverable loss was $28,500. Because of the settlements plaintiff has already re-

2. *Petrolane Inc. v. Robles,* 154 P.3d 1014 (Alaska 2007).

3. *Id.* at 1016.

4. *Id.* at 1020.

5. *Id.* at 1020–21 (footnotes omitted) (citing *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 208–17, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994)).

6. *Id.* at 1021.

7. *Id.* at 1020 & n. 21, 1022–23.

8. *Id.* at 1023.

9. *Id.* at 1024 (rejecting the notion that the "subject to" provision of subsection .080(c) repealed by the legislature in 1997 was "critical language" compelling a full offset until that provision's repeal).

10. *Id.*

1. In round numbers.

ceived over three times more than what he is entitled to. The question in this case is whether he may obtain an additional $9,500 from the remaining defendant.

Today's opinion answers this question in the affirmative. It relies on the recently decided case of *Petrolane, Inc. v. Robles*.[2] *Petrolane* held that AS 09.17.080(d) (effective in 1989) precluded offsetting prior settlements from a judgment where an offset is needed to avoid a double recovery. Justice Eastaugh wrote a dissent in *Petrolane* in which I joined.[3] The dissent took the position that the court's opinion was wrong as a matter of statutory construction, precedent, and policy.

*Petrolane* now stands as a decision of this court and as such it has precedential effect. Today's opinion is right in holding that it controls the outcome of this case. Based on the principle of stare decisis I join in the result that today's opinion reaches even though I remain convinced that *Petrolane* was wrongly decided.[4]

As matters now stand the long-standing policy prohibiting double recoveries has been eliminated. Plaintiffs who have received all that they should receive as determined by a jury can receive duplicate (and triplicate) payments. The reasons cited in support of this policy—that plaintiffs bear the risk of settling for too little and that permitting double recovery facilitates settlement—seem insubstantial. Settling for too little has always been a risk for plaintiffs. They might lose in the trial against the remaining defendant, or a favorable judgment might prove to be uncollectable. Settlements occur because of risk-reward calculations that remain complex, with or without the possibility of a double recovery. Neither of these reasons approaches in force the reason underlying the policy against double recoveries: the coercive force of the law should not require a party to pay for a loss for which full compensation has already been paid.

**2.** 154 P.3d 1014 (Alaska 2007).

**3.** *Id.* at 1028.

**4.** Stare decisis is at its strongest in cases involving the interpretation of statutes. Unlike cases involving the constitution, the legislature may

I believe that permitting double recoveries continues to be bad public policy and that the fact that double recoveries are now permitted is an unintended consequence of the tort reform movement. Nonetheless, this is where *Petrolane* leaves us. If there is to be a change, it must come through the legislative process.

override an incorrect statutory interpretation. There is thus less justification in such cases for a court to overturn its own rulings. *See* William Eskridge, *Overruling Statutory Precedents,* 76 GEO. L.J. 1361 (1988).